Kermit D. WHITTEMORE, Appellant,

v.

STATE of Alaska, Appellee.

No. 4314.

Supreme Court of Alaska.

Sept. 26, 1980.

William H. Babcock, Sitka, for appellant.

James L. Hanley, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

PER CURIAM.

Kermit D. Whittemore was charged by felony complaint twice amended, of violating the Uniform Narcotic Drug Act, AS 17.10.010 et seq., by having a narcotic drug, cocaine, knowingly in his possession and control. After his motion to suppress the cocaine was denied, Whittemore entered a

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

plea of *nolo contendere,* reserving the right to appeal the validity of the search and seizure of that evidence.[1] He was found guilty and given a suspended imposition of sentence with three years' probation subject to certain conditions, including payment of a $2,000 fine. He now appeals the suppression issue.[2]

On September 9, 1977, Sgt. Edgar J. Thornton of the Sitka Police Department appeared before Magistrate Marilyn D. Hanson and was issued a search warrant based on his oral testimony, never verified by oath or affirmation. Sgt. Thornton explained that a brown package addressed to Kermit Whittemore had been opened at the Anchorage airport and found to contain a white powder in a plastic bag. This substance was field–tested by Trooper Roy Holland of Anchorage and found to contain cocaine. The package was then wrapped in an orange cellophane bag and sent to Sgt. Thornton in Sitka.

When the package arrived, Sgt. Thornton, armed with his search warrant, removed it from the cellophane bag and allowed Alaska Airlines personnel to deliver it to Whittemore. After Whittemore had signed for and received the package, Sgt. Thornton arrested him and seized the package.

Whittemore based his motion to suppress on the failure of the magistrate to obtain sworn testimony before issuing the search warrant. The state argued that because the package was lawfully seized in Anchorage and was continually under the control of law enforcement officers, there was no need for a warrant in Sitka. Since none of the facts concerning the events in Anchor-

age were presented at the preliminary hearing,[3] we ordered a remand to the superior court on September 10, 1979, "for the limited purpose of holding an evidentiary hearing to determine whether an illegal search or seizure occurred in Anchorage with respect to the parcel in question." At that hearing, held on November 5, 1979, Denise Mahoney, a customer service agent with Alaska Airlines, testified that she opened the parcel in question because the sender had made several inconsistent statements about its contents. Ms. Mahoney was not an agent of or connected with any governmental entity[4] and testified that she opened the package to be sure that it was not "harmful in some way to the passengers on board the aircraft." Upon opening the parcel, she observed a baggie containing white powder, notified the airport police, and placed the open package on a supervisor's desk. The airport police arrived and removed the parcel. A few minutes later, Ms. Mahoney went to a first aid room in which she saw the package and Trooper Holland. Holland testified that, upon responding to a call concerning a possible drug violation at the airport, he was shown a small, open package in the custody of the airport police, which contained a white powder in a plastic baggie. Based on his experience with narcotics investigations, Holland felt the powder might be cocaine, and "field tested" the substance with positive results.[5] Holland subsequently sent the package to Sgt. Thornton in Sitka as previously described.

Based on the foregoing, the superior court determined that since Ms. Mahoney was not a government agent, there had been no search by the police, and that the

---

1. *Oveson v. Municipality of Anchorage,* 574 P.2d 801 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974).

2. In addition to his search and seizure argument, Whittemore also alleges defects in the complaint and indictment. The state correctly points out that these issues were waived since they were not raised below.

3. The state's attempt to explore testing of the seized substance in Anchorage was abandoned in the face of Whittemore's hearsay objections.

4. It was conceded by Whittemore's counsel at the evidentiary hearing that Ms. Mahoney was not a government agent and therefore not subject to constitutional requirements pertaining to search warrants.

5. Holland also testified it was customary to forward such a positively tested substance to the laboratory for confirmation.

package had been legitimately seized by Holland under the "plain view" doctrine. We agree, and thus affirm.

It is generally recognized that airline employees have authority to search packages for the purpose of discovering contraband or inaccurately–declared contents. ... [S]earches by airline employees, acting for an independent and legitimate airline purpose and not in conjunction with or at the direction of the police, do not violate constitutional prohibitions against unreasonable search and seizure.

*Snyder v. State*, 585 P.2d 229, 231 (Alaska 1978) (footnotes omitted).[6] Ms. Mahoney's search was thus valid. It follows that Trooper Holland's seizure of the package, in light of his narcotics experience and the sender's misrepresentations concerning the contents of the package, was valid under the "plain view" doctrine since the baggie containing white powder was not "an apparently innocuous object." *Weltin v. State*, 574 P.2d 816, 820–21 (Alaska 1978); *Anderson v. State*, 555 P.2d 251, 256–57 (Alaska 1976).

Since the events in Anchorage were legal, no warrant was needed in Sitka under our recent holding in *McConnell v. State*, 595 P.2d 147 (Alaska 1979). In *McConnell*, we adopted the "reassertion of control" doctrine announced in *United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973), subject to the following limitations:

First, contraband must be placed in transit from one person to another. Second, the contraband must be initially discovered through lawful means, such as a search by a private person. Third, law enforcement officials must come into lawful possession of the contraband. Seizure of contraband after it is observed in plain view is one method of acquiring lawful possession. Fourth, authorities in possession must forward the parcel to authorities at the intended destination under controlled circumstances. Thus, the receiving authorities must have information enabling them to identify the parcel when it arrives, such as a description

of the container and its contents. Fifth, the parcel must be under security or under reasonably continuous surveillance by authorities once it arrives at its destination. The reasonably continuous surveillance must continue after the consignee claims the container. Finally, any substantial break in the chain of custody will vitiate the lawfulness of the search.

595 P.2d at 154–55 (footnote omitted).

The requirements of *McConnell* having been met, the decision of the superior court denying Whittemore's motion to suppress is AFFIRMED.

---

**6.** *See also McConnell v. State*, 595 P.2d 147, 150 52 (Alaska 1979).