**Nicholas V. LONG, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2423.

Court of Appeals of Alaska.

May 5, 1989.

·Galen Paine, Asst. Public Defender, Bethel, and Dana Fabe, Public Defender, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Nicholas V. Long was convicted after pleading no contest to a charge of misconduct involving a controlled substance in the fourth degree (possession with intent to deliver one ounce or more of marijuana). Long reserved the right to appeal an order entered by Superior Court Judge Gail R. Fraties denying Long's motion to suppress evidence. Judge Fraties sentenced Long to four years with three years suspended. Long appeals, challenging the superior court's suppression ruling and contending that his sentence is excessive.

On April 28, 1986, Long paid to ship a package from the Bethel airport to an individual named Ward Wheeler in Anchorage via "SpeedMark," a MarkAir express freight service. Lynette Purcell, the MarkAir ticket agent on duty at the Bethel airport, became suspicious at Long's conduct. Fearful that the package could be dangerous and might contain explosives, Purcell called the police and spoke with her husband, who is an officer in the Bethel Police Department. Purcell told her husband about the package and asked for information concerning Long's background. She was told that no information was immediately available. Upon concluding the call, Purcell decided to search the package. She opened it and discovered $1,850 in fifty-dollar bills. Because MarkAir policy did not permit freight shipment of cash, Purcell initially sought to return the package to Long, but Long had already left the airport. Purcell then sent the package through to its destination, alerting the Bethel police and her own supervisor to her discovery.

On the following day, MarkAir personnel in Anchorage became suspicious of a twelve-bottle whiskey carton that Ward Wheeler attempted to ship to Long in Bethel. MarkAir Anchorage claims manager Rocky Grimes x-rayed the package and discovered that it contained ten bottles around its perimeter, but that there were no bottles in the two center compartments. Grimes opened the package and discovered approximately seven grams of cocaine and

about three-quarters of a pound of marijuana.

Grimes contacted the Alaska State Troopers and reported finding the apparent contraband. The troopers took possession of the package from Grimes, resealed it, and arranged for its controlled delivery to Long in Bethel. Long was arrested at the Bethel airport after claiming the package and was subsequently charged with one count of misconduct involving a controlled substance in the third degree (possession with intent to deliver cocaine) and one count of misconduct involving a controlled substance in the fourth degree (possession with intent to deliver one ounce or more of marijuana). The state dismissed the third-degree misconduct charge in return for Long's no contest plea to the fourth-degree misconduct charge.

On appeal, Long claims that the initial opening and search of his SpeedMark package at the Bethel airport was instigated by the police and amounted to an illegal governmental search, violating his rights under the fourth amendment to the United States Constitution and article 1, section 14, of the Alaska Constitution. Long alleges a similar violation of his rights resulting from the Anchorage search of the package sent by Wheeler. Long claims that the Anchorage search was either instigated by the police or was a fruit of the prior illegal search in Bethel.

These same arguments were rejected by the superior court, following an evidentiary hearing. After thoroughly considering the evidence presented by the parties, Judge Fraties expressly found, as a factual matter, that Lynette Purcell made up her own mind to search Long's SpeedMark package, that she did so for a legitimate private purpose, and that her decision was based upon reasonable suspicion. Judge Fraties further found no governmental involvement in Purcell's decision to conduct the search. On this basis, the judge concluded that the search was a private one and that it did not violate Long's constitutional rights.

With regard to the Anchorage search, Judge Fraties reached a similar conclusion based on like findings. Considering the evidence before him, the judge found that Rocky Grimes' decision to search the package addressed by Wheeler to Long was not instigated or encouraged by the police and that the search was unrelated to the prior day's search of Long's SpeedMark package in Bethel. Judge Fraties concluded that, under the circumstances, the Anchorage search was a legitimate private search.

Long does not quarrel with the well-established rule that the search and seizure clauses of the Alaska and United States Constitutions apply only to governmental action; a private search—one that is neither instigated nor joined in by the state—does not amount to a constitutional violation. *See Snyder v. State,* 585 P.2d 229, 232 (Alaska 1978). *See also Whittemore v. State,* 617 P.2d 1, 3 (Alaska 1980); *McConnell v. State,* 595 P.2d 147, 151 (Alaska 1979); *Stange v. State,* 559 P.2d 650 (Alaska 1977); *State v. Stump,* 547 P.2d 305, 307 (Alaska 1976); *Bell v. State,* 519 P.2d 804, 807 (Alaska 1974).

The evidence in the record in this case, when viewed in the light most favorable to the state, supports the trial court's conclusion that both searches were conducted by private parties, without governmental involvement. Long nevertheless contends that the evidence relied on by the trial court—particularly Lynette Purcell's testimony—was "inherently incredible." Long relies on a number of inconsistencies and discrepancies in Purcell's grand jury testimony, together with other evidence presented below that tends to discredit Purcell's claim that she opened Long's package out of concern for airline interests, and without encouragement from the police.

While the evidence relied on by Long certainly does tend to reflect on Purcell's credibility, it does not render that testimony inherently unbelievable. The trial court has the primary responsibility for determining issues of credibility. *Anthony v. State,* 521 P.2d 486, 492 (Alaska 1974). In the present case, the court was aware of the various factors relied on by Long to dispute Purcell's account. The court never-

theless elected to give credence to Purcell's version of events. We cannot say that the court's decision was clearly erroneous. *State v. Ridgely,* 732 P.2d 550, 554 (Alaska 1987).

Likewise, the record contains substantial evidence to support the superior court's factual findings with respect to the Anchorage search. These findings are not clearly erroneous.

Because Judge Fraties was not clearly erroneous in determining, as a matter of fact, that the government had no involvement in either the Bethel or Anchorage search, it follows that the judge was correct as a matter of law in deciding that the searches were not violative of Long's constitutional rights. We find no error in the denial of Long's suppression motion.

Long separately asserts that his sentence of four years with three years suspended is excessive. Misconduct involving a controlled substance in the fourth degree is a class C felony, punishable by a maximum term of five years' imprisonment. Presumptive terms for second and subsequent felony offenders are two and three years. AS 12.55.125(e). There is no presumptive term for a first felony offender.

■ Although Long had previously been convicted of misdemeanor assault, he had no prior felony convictions and was therefore not subject to a presumptive term. Long initially argues that his sentence is violative of *Austin v. State,* 627 P.2d 657 (Alaska App.1981). In that case, we held that a first felony offender who is not subject to presumptive sentencing should ordinarily receive a sentence that is more favorable than the presumptive term for a second felony offender who has been convicted for the same conduct. We indicated that sentences equaling or exceeding the presumptive term should be reserved for exceptionally aggravated cases. *Id.* at 657–58.

We have subsequently made it clear, however, that the *Austin* rule focuses primarily on the unsuspended portion of a first offender's sentence. *Tazruk v. State,* 655 P.2d 788 (Alaska App.1982). Although Long's total sentence involved four years

of imprisonment, a three-year portion of the sentence was suspended, leaving only one year of actual time to serve. When realistically viewed, the sentence is substantially more lenient than the two-year presumptive term that would have been applicable to Long had he been convicted as a second felony offender. We find no violation of the *Austin* rule.

■ Long next asserts that his sentence is excessive in comparison to the sentence received in Anchorage by Wheeler, Long's supplier. Wheeler was convicted of two counts of misconduct involving a controlled substance in the fourth degree and received a suspended imposition of sentence with no incarceration. Like Long, he is not a youthful first offender and has a prior misdemeanor record. Long contends that the disparity between his sentence and the sentence received by Wheeler is so irrational as to require that Long's sentence be found excessive.

We disagree. Sentencing is an individualized process. *Smith v. State,* 739 P.2d 1306, 1309 (Alaska App.1987). Here, although there are undeniable similarities in the conduct and background of Wheeler and Long, the two men were different individuals and received sentences from different judges. The significant disparity between the sentences received by Wheeler and Long certainly gives cause for concern. This disparity, in our view, justifies close scrutiny of the sentence received by Long. Nevertheless, while uniformity is an important goal of our sentencing system, "[c]omparison with other sentences cannot be determinative of a particular sentence appeal." *Strachan v. State,* 615 P.2d 611, 614 (Alaska 1980).

Long was not a youthful first offender. Moreover, as the sentencing court correctly pointed out, although Long was convicted of a class C felony, his offense was particularly serious because it involved conduct actually amounting to a class B felony. Long's illegal conduct was deliberate and was apparently motivated primarily by the desire for profit. Furthermore, the offense occurred in an area of the state that is

currently experiencing particularly severe effects from substance abuse.[1]

These factors were all properly noted and relied upon by Judge Fraties. They support the judge's conclusion that a sentence involving a substantial amount of time was appropriate in Long's case. In deciding to impose a term of four years with three years suspended, Judge Fraties gave careful attention to all of the applicable sentencing criteria, and gave considerable prominence to the goal of rehabilitation. *See State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

Wheeler's case is not before this court, and we have not had the benefit of formal briefing and argument with respect to the appropriateness of the sentence that he received. Under the circumstances, it would of course be improper for us to reach any definitive opinion as to the appropriateness of the sentence that he received. It nevertheless appears to us, based on the information presented in this case, that a convincing argument could be made that, if irrational disparity exists between the sentences received by Wheeler and Long, that disparity is explained by the imposition of an unusually lenient sentence in Wheeler's case, rather than by the imposition of an unduly harsh sentence in Long's case. *Joe v. State*, 542 P.2d 159, 163–64 (Alaska 1975).

Our independent review of the record convinces us that Long's sentence is not disproportionately long and is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgment is AFFIRMED.

---

1. Long implies that Judge Fraties' reference to the particular problems posed by substance abuse in the Bethel area was an inappropriate consideration for purposes of sentencing. We agree with Long that arbitrary regionalism is undesirable in sentencing. Nevertheless, Alaskan communities differ widely in character and in the extent to which various social problems affect them at any given time. Just as all crimes occur in a specific context, so all sentences are imposed in a specific context. In any given case, evaluation of the seriousness of an offense must realistically be based upon consideration of the impact that the offense had in the context of the community within which it occurred. Provided that undue emphasis is not given to this factor, there is nothing improper in a sentencing court's decision to take into account the particularly serious impact of a crime on a given community.