**Kash VIGUE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–6977.**

Court of Appeals of Alaska.

Sept. 3, 1999.

Rehearing Denied Sept. 17, 1999.

Averil Lerman, Assistant Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for appellee.

BEFORE: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

MANNHEIMER, J.

A police officer stopped Kash Vigue for a minor offense. During their encounter, Vigue tossed or dropped something to the ground. This "something" turned out to be several small pieces of crack cocaine. The officer arrested Vigue and transported him to the police station. During the ride in the patrol car, Vigue removed a crack pipe from his clothes and tried to conceal the pipe between the seat cushions of the vehicle. Based on this episode, Vigue was charged with two offenses: third-degree controlled substance misconduct (possession of co-

caine)[1] and tampering with physical evidence[2].

This appeal presents two issues: First, was the initial investigative stop lawful? Second, does a person commit the crime of tampering with physical evidence under AS 11.56.610(a)(1) when the person drops or throws contraband to the ground in an attempt to prevent the contraband from being found on their person?

We conclude that the police officer had probable cause to arrest Vigue at the time of the initial stop, and thus all of the evidence flowing from that stop was admissible against Vigue. We further conclude that Vigue's act of dropping or throwing the cocaine to the ground during the stop does not constitute the crime of tampering with physical evidence, and therefore Vigue's conviction for that crime must be reversed.

*The initial stop was supported by probable cause*

On August 19, 1997, while driving down Barrow Street in downtown Anchorage, Officer Phillip Kantor noticed Vigue standing near the corner of Barrow and Fourth Avenue. Kantor saw Vigue "facing the building[, with] his hands down by his crotch area. It looked to [Kantor] as if [Vigue] was urinating." Because urination in public violates an Anchorage municipal ordinance[3], Kantor pulled over in order to speak with Vigue.

When Vigue walked away from Kantor and rounded a corner, Kantor got out of his vehicle and called for Vigue to return. Upon hearing Kantor call out, Vigue stopped, but he did not turn around to face Kantor. Instead, Vigue again began to walk away, yelling "What's the problem?" Kantor directed Vigue to turn around so that Kantor could see Vigue's hands. At this point, Vigue turned around and began walking back toward Kantor, but he kept his hands behind his back. Kantor repeatedly asked Vigue to place his hands where Kantor could see them, but Vigue refused to comply.

As Vigue approached Kantor's car, Kantor saw Vigue make "a little shaking motion", as if Vigue had just dropped (or attempted to drop) something from his hands. Because Vigue's body blocked his view, Kantor could not see what, if anything, had fallen to the ground.

Vigue walked over to Kantor's vehicle and placed his hands on the hood of the patrol car. At this point, Kantor walked over to where Vigue had been standing when he made the shaking motion. Examining the ground, Kantor found five little white rocks that appeared to be crack cocaine. Kantor then placed Vigue under arrest for possession of cocaine.

Following his indictment, Vigue asked the superior court to suppress all of the evidence stemming from this investigative stop. Vigue argued that Kantor's claim about public urination was a mere pretext, and that Kantor had really stopped Vigue because the officer knew that Vigue was a drug user and he hoped to find drugs in Vigue's possession.

At the ensuing evidentiary hearing, Officer Kantor testified to the facts recited above. Vigue offered the testimony of Jarrell Arnold, who stated that he was with Vigue at the time and that Vigue did not urinate in public.

After hearing this testimony, Superior Court Judge Eric T. Sanders found that the decision came down to a question of "whether a police officer in Officer Kantor's position would have probable cause to believe that there was justification to issue a citation."

> *The Court:* What's necessary for [the issuance of] a citation is probable cause. The argument [is that] ... this is kind of a pretext stop[,] ... that, really, urination had nothing to do with stopping Mr. Vigue. I don't accept [that.] ... [T]he court basically finds [Kantor's] explanation credible.... [This really] is kind of a credibility contest between the witness Arnold and the officer. I don't find Arnold's testimony to be credible.... I really think that ... [Arnold's] explanation of what was going

---

1. AS 11.71.030(a)(1).

2. AS 11.56.610(a)(1).

3. *See* Anchorage Municipal Code § 08.75.120.

on was just not credible. And ... he also, in the court's view, is probably biased in favor of Mr. Vigue. He testified that they're good friends. So he had a reason to testify in the way he did. So, if it comes down ... to a contest about who is more credible, the court finds Officer Kantor to be credible and Mr. Arnold not to be more credible than the officer[.]

... [T]he officer was ... driving down the street [and] he saw ... Vigue in a position [where it] appeared that he was urinating, [so] he stopped the car. The purpose was to issue a citation. The court has no reason whatsoever ... to find that that testimony is not credible. Having [been] stopped[,] ... the defendant then dropped something which the officer later determined to be cocaine.... [B]ased on those findings, the stop of the defendant and the subsequent arrest was not illegal. So the motion to suppress is denied for those reasons.

■ On appeal, Vigue argues that Judge Sanders should not have believed Officer Kantor and should, instead, have credited the testimony of the defense witness, Jarrell Arnold. But the trial court has the primary responsibility for evaluating witness credibility.[4] Judge Sanders observed both witnesses and concluded that Officer Kantor's version of events was credible.

■ Under that version of events, Kantor had probable cause to believe that he had observed Vigue urinating in public. Thus, under AS 12.25.180, the officer was empowered to stop Vigue and issue him a citation. Accordingly, Judge Sanders properly denied Vigue's suppression motion.

*Vigue's conviction for tampering with physical evidence must be reversed*

As explained above, Vigue was charged with two crimes: possessing cocaine and tampering with physical evidence. The tampering count was intended to cover two sepa-

rate acts: Vigue's act of tossing or dropping the cocaine to the ground when he turned around and walked back to Kantor, and Vigue's later act of placing the crack pipe in the seat cushions of the patrol car.

Vigue contends that his act of tossing or dropping the cocaine to the ground does not constitute the crime of tampering with physical evidence. Under AS 11.56.610(a)(1), a person commits this crime if the person "destroys, mutilates, alters, suppresses, conceals, or removes physical evidence with the intent to impair its verity or availability in an official proceeding or a criminal investigation". The question is whether Vigue committed the *actus reus* of this offense. That is, did Vigue's act of tossing or dropping the cocaine to the ground constitute a "suppress[ion], conceal[ment], or remov[al]" of the evidence?

This issue has been addressed by several states that have evidence-tampering statutes similar to Alaska's. Although these courts rely on different rationales for their decisions, they unanimously agree that a defendant's act of dropping or tossing away evidence in the sight of the police does not constitute the *actus reus* of tampering with physical evidence.

In *Commonwealth v. Delgado*[5], the defendant tossed away a bag of cocaine onto a garage roof as he was being pursued down an alley by the police.[6] The Pennsylvania Supreme Court held that this conduct—"discarding contraband in plain view of the pursuing officer"—did not constitute tampering with evidence.[7] The court concluded that the defendant had neither destroyed, altered, nor concealed evidence within the meaning of the statute. Rather, the court stated, the defendant's conduct amounted to "nothing more than an abandonment of the evidence." [8]

As a second rationale for its decision, the Pennsylvania court noted that Pennsylvania law classifies tampering with physical evidence as a higher degree of crime than possession of cocaine. "Under these circum-

---

**4.** See *Long v. State*, 772 P.2d 1099, 1101 (Alaska App.1989).

**5.** 544 Pa. 591, 679 A.2d 223 (1996).

**6.** See *id.* at 224.

**7.** *Id.* at 225.

**8.** *Id.*

stances," the court said, "we do not believe that the [Pennsylvania] General Assembly intended the simple act of abandoning [contraband] in plain view of the police to constitute the commission of an additional crime of a greater degree." [9]

In *Boice v. State*[10], the Florida Court of Appeal relied on similar reasoning to conclude that "the simple act of abandoning a bag of crack cocaine at the scene of an arrest, in the clear sight of a law enforcement officer," did not constitute tampering with physical evidence.[11] In *Boice*, the defendant threw a small bag containing a rock of cocaine out of his car window after the car was surrounded by police. One of the officers retrieved the bag from the road, where it was sitting in plain view.[12]

The Florida court noted that the defendant had neither destroyed, altered, nor concealed the cocaine. The court further noted that, even though the defendant had thrown the cocaine from his car, he had not removed the drug from the immediate area of the arrest. Under these circumstances, the court concluded, the defendant had not committed the *actus reus* of the offense.[13]

Like the Pennsylvania Supreme Court in *Delgado*, the Florida Court of Appeal relied on a second rationale for their decision—the conclusion that the Florida Legislature had not intended to impose additional felony penalties on defendants like Boice. The court stated:

> If the defendants' [conduct] in this case constituted tampering [with evidence], then a nineteen-year-old who threw a can of beer from his car when stopped by a police officer would commit not only the second-degree misdemeanor of possession of alcoholic beverages, but also the third-degree felony of tampering with the evidence. We do not believe that the legisla-

ture intended an additional felony under such circumstances.

*Boice*, 560 So.2d at 1385 (footnotes omitted).

The State, in its brief, takes Vigue to task for failing to note that the Florida Supreme Court, in a case entitled *State v. Jennings*[14], limited the holding in *Boice*. This is true, but the limitation does not have particular relevance to Vigue's case.

The defendant in *Jennings* tossed several small objects—allegedly, rocks of cocaine— into his mouth as the police approached; the defendant succeeded in swallowing the cocaine despite the efforts of the officers, and the evidence was never recovered.[15] The trial court and the intermediate court of appeal both held that, pursuant to the interpretation of the statute adopted in *Boice*, the defendant's conduct did not constitute tampering with evidence. The Florida Supreme Court disagreed, and they took the occasion to chastise the lower courts for their "overly broad reading of *Boice* ":

> We disagree with *Boice* to the extent it can be read to mean that tossing evidence away in the presence of a law enforcement officer does not, as a matter of law, constitute a violation of the statute. Depending upon the circumstances, such an act could amount to tampering or concealing evidence.

*Jennings*, 666 So.2d at 133. The supreme court concluded that Jennings had been properly charged with tampering with evidence because "swallowing an object clearly constitutes altering, destroying, concealing, or removing [the object] within the meaning of [Florida's statute]." [16]

The Florida court also expressed its approval of the result reached in another intermediate appellate decision, *Hayes v. State* .[17] In *Hayes*, the defendant dropped a bag of cocaine down a drainage pipe while he was being pursued by police. The court of appeal

---

9. *Id.*

10. 560 So.2d 1383 (Fla.App.1990).

11. *Id.* at 1384.

12. *See id.*

13. *See id.*

14. 666 So.2d 131 (Fla.1995).

15. *See id.* at 132.

16. *Id.* at 133.

17. 634 So.2d 1153 (Fla.App.1994).

refused to extend *Boice* to these facts; instead, the court upheld the defendant's evidence-tampering conviction.[18]

The State claims that the decision in *Jennings* undermines Vigue's argument in this appeal. But while the Florida Supreme Court limited the scope of the legal inferences that might be drawn from *Boice*, the court did not overrule *Boice's* specific holding that a defendant who tosses contraband to the ground in the sight of the police does not violate the tampering with evidence statute. The issue, according to the Florida Supreme Court, turns on the facts of the case. And the facts of Vigue's case are essentially the same as the facts in *Boice*. Because the Florida Supreme Court did not express disapproval of the result reached in *Boice*, that case remains valid authority in support of Vigue's claim in the present appeal.

In *State v. Patton*[19], the Tennessee Court of Criminal Appeals held that a defendant who "toss[es] aside a bag of marijuana during the course of flight from law enforcement officials" does not violate Tennessee's evidence-tampering statute.[20] Adopting the same reasoning as *Delgado* and *Boice*, the Tennessee court concluded that the Tennessee legislature had not intended for the statute to reach so far:

> Like the Florida District Court of Appeal, we do not believe that the legislature intended to inflict greater punishment upon an individual for attempting to discard evidence [of a crime] than he would receive for commission of the crime. Statutes must not be construed in a manner which may lead to absurd results. [Citations omitted] If "mere abandonment" of contraband falls within the class of [conduct] made criminal by [the Tennessee evidence-tampering statute], there

is a substantial likelihood of an unreasonable result. Thus, ... [e]ven if the factual allegations within the indictment are accurate, the defendant, in our view, has not violated the [evidence-tampering] statute.

*Patton*, 898 S.W.2d at 736.

The appellate division of the New Jersey Superior Court has construed that state's evidence-tampering statute even more narrowly. In *State v. Sharpless*[21], the defendant threw twenty-three bags of heroin to the ground shortly before the police reached him. (The police discovered this heroin when, looking for a handgun, they searched the area where the defendant had been standing.[22]) The question was whether the defendant's "act of discarding criminal contraband upon the approach of a police officer constitute[d] evidence tampering within the intent of [the New Jersey statute]".[23]

The New Jersey court reviewed several decisions from other states upholding evidence-tampering convictions for conduct such as flushing drugs down a toilet when the police knocked on the door[24], swallowing drugs upon being apprehended by the police[25], and snatching a bottle filled with contraband liquid from a police officer and smashing it on the ground[26]. The court then contrasted these decisions with the Pennsylvania Supreme Court's decision in *Delgado, supra* (the case in which a defendant, being chased by the police, tossed a bag of cocaine onto a garage roof). The New Jersey court approved the Pennsylvania court's conclusion that "[the defendant's] act of discarding contraband in plain view of the police ... was nothing more than an abandonment of the evidence" and did not constitute "destruction or concealment of evidence as contemplated by the statute".[27]

---

18. *See id.* at 1154.

19. 898 S.W.2d 732 (Tenn.Crim.App.1994).

20. *Id.* at 736.

21. 314 N.J.Super. 440, 715 A.2d 333 (1998).

22. *See id.* at 336.

23. *Id.* at 342.

24. *See Commonwealth v. Govens,* 429 Pa.Super. 464, 632 A.2d 1316, 1327–29 (1993).

25. *See Commonwealth v. Morales,* 447 Pa.Super. 491, 669 A.2d 1003, 1005–06 (1996).

26. *See Frayer v. People,* 684 P.2d 927, 928–29 (Colo.1984).

27. *Sharpless,* 715 A.2d at 342 (quoting *Delgado,* 679 A.2d at 225).

The New Jersey court noted that in a previous case—*State v. Fuqua*[28]—the court had given a similar construction to a New Jersey statute that prohibits persons from "suppress[ing], by way of concealment", any evidence of *their own* criminal wrongdoing. The defendant in *Fuqua* was charged with violating this statute because he concealed cocaine in his socks.[29] The court concluded that the statute should not be interpreted to encompass this type of conduct:

> Under . . . the State's theory, [a] defendant would [be] required to have the cocaine in plain view in order to avoid committing this crime[.] [The State argues that,] by placing the cocaine in his socks, [the] defendant . . . committed a separate indictable offense. . . . [But if] the State is correct, [then] all illegal substances [and] weapons . . . would [have] to be carried in plain view or else the possessor could be convicted of a [separate] crime . . . in addition to [their] substantive offense.

*Sharpless*, 715 A.2d at 343 (quoting *Fuqua*, 696 A.2d at 47).

To avoid this result, the *Fuqua* court ruled that, as applied to possessory offenses, the statute should be construed to apply only to *completed* crimes, and not to the concealment of contraband in an attempt to hide an ongoing possessory offense.[30] And in *Sharpless*, the New Jersey court ruled that this same limitation should be incorporated into New Jersey's general evidence-tampering statute—a statute similar to Alaska's.[31] The court reasoned as follows:

> [Similar to our decision in *Fuqua* ], we conclude that a person who possesses drugs may not be found guilty of tampering with evidence simply because he discards or hides the drugs upon the approach of a police officer. . . . [I]f such conduct were held to constitute tampering with evidence, [then] any person in possession of contraband who took any steps to

prevent the police from discovering the contraband could be charged not only with the possessory offense but also with tampering with evidence. Absent a clearer indication that this was the Legislature's intent in enacting N.J.S.A. 2C:28–6, we decline to [infer such an intent]. Instead, consistent with [our decision] in *Fuqua*, we construe the phrase "conceal[ment]" of "any article . . . with the purpose to impair its availability in [an investigation]" . . . to refer only to "evidence of a completed criminal act, not a current possessory crime."

*Sharpless*, 715 A.2d at 343 (quoting *Fuqua*, 696 A.2d at 47). Accordingly, the New Jersey court held that the "defendant's abandonment of his drug supply during the course of his ongoing possession of heroin with the intent to distribute . . . did not constitute tampering with evidence." [32]

The State offers little response to these cases (other than noting that the Florida Court of Appeal's decision in *Boice* has been limited by the Florida Supreme Court's decision in *Jennings* ). Rather than responding to the reasoning of these cases, the State urges us to ignore this issue of statutory construction. The State suggests that we can do this because Vigue's tampering with evidence charge actually encompassed two distinct theories of prosecution.

■ As explained above, the first theory was that Vigue tampered with evidence when he tossed or dropped the bag of cocaine to the ground in Officer Kantor's presence, while the second theory was that Vigue tampered with evidence when he concealed the crack pipe in the cushions of Kantor's patrol vehicle. The State argues that, because the tampering with evidence charge incorporated both of these theories, and because Vigue only challenges the validity of the first theory, Vigue's conviction can be sustained even

---

**28.** 303 N.J.Super. 40, 696 A.2d 44 (1997).

**29.** *See Sharpless*, 715 A.2d at 342–43.

**30.** *See Fuqua*, 696 A.2d at 46–47.

**31.** New Jersey Statute 2C:28–6 declares that a person commits evidence-tampering if the person "[a]lters, destroys, conceals or removes any arti-

cle, object, . . . or other thing of physical substance with [the] purpose to impair its verity or availability" in an official proceeding or investigation. This statute is quoted in *Sharpless*, 715 A.2d at 342.

**32.** *Id.* at 348.

if we agree with Vigue that the State's first theory of prosecution is invalid.

The State's argument would be convincing if Vigue's jury had returned a special verdict indicating that they based their verdict on the State's second theory of prosecution. But Vigue's jury returned only a general verdict on the evidence-tampering charge. We therefore can not determine which of the State's theories formed the basis for the jury's verdict.

Although the State introduced evidence tending to prove its second theory of prosecution (the theory that Vigue hid a crack pipe in the seat cushions of the patrol car), Vigue's guilt under this theory was not a foregone conclusion. At trial, Vigue asserted that the crack pipe found in the patrol car did not belong to him. He further asserted that, because he was handcuffed during his ride in the patrol car, it would have been physically impossible for him to remove a pipe from his pants and place it in the seat cushions. Thus, the jury had to resolve substantial questions of fact and credibility before it could return a verdict on this theory of prosecution.

Because Vigue's guilt under the second theory was actively disputed, and because the jury returned only a general verdict on the evidence-tampering charge, we can not determine whether Vigue was convicted of evidence-tampering under the State's first theory (for tossing or dropping the cocaine to the ground) or under the State's second theory (for hiding the crack pipe in the patrol car), or both. Because of this, if the State's first theory of prosecution is invalid, the verdict must be reversed.[33] We therefore must decide whether the evidence-tampering statute covers Vigue's act of tossing or dropping the bag of cocaine to the ground. Vigue did not destroy, mutilate, or alter the cocaine, so the precise question is whether Vigue, by his conduct, "suppress[ed], conceal[ed], or remove[d]" the cocaine when he tossed or dropped it to the ground before returning to speak to Officer Kantor.[34]

The legislative commentary to AS 11.56.610 does not define any of these terms.[35] It appears, however, that if the term "remove" is not to be redundant of the other terms used in the statute (especially "suppress" and "conceal"), then "remove" must refer to the act of moving an object from the scene of the crime, or from any location where its evidentiary value can be deduced, to some other place where its evidentiary significance may not be detected. Using this construction, Vigue's conduct did not constitute a "removal" of the cocaine.

If the terms "suppress" and "conceal" are construed broadly, then it is possible to speak of Vigue's conduct as an act of suppression or concealment. By ridding his pockets and hands of the cocaine, Vigue probably intended to make it less likely that the cocaine would come to Officer Kantor's attention.

But it is important not to confuse Vigue's intent with his physical actions. The evidence-tampering statute uses the terms "suppress" and "conceal" to define the *actus reus* of the crime. In addition to this *actus reus*, the statute also requires proof of a culpable mental state—here, Vigue's intent to "impair [the] availability" of the evidence. The fact that Vigue intended to make it harder for Officer Kantor to detect the cocaine does not mean that Vigue actually succeeded in "suppressing" or "concealing" the cocaine when he tossed or dropped it to the ground. Indeed, under the facts of this case, no suppression or concealment occurred: Officer Kantor observed Vigue's action and was alerted to the possibility that something might be on the ground at the spot where Vigue had been standing. We agree with the courts of Pennsylvania, Florida, Tennessee, and New Jersey that conduct such as Vigue's amounts to nothing more than abandonment of the evidence, not suppression or concealment of evidence.

One could argue that, even if Vigue did not succeed in suppressing or concealing the co-

---

**33.** *See* Alaska Criminal Rule 31(a); *see also State v. James,* 698 P.2d 1161, 1166–67 (Alaska 1985).

**34.** AS 11.56.610(a)(1).

**35.** *See* 1978 Senate Journal, Supp. No. 47 (June 12), p. 83.

caine, he nevertheless tried to do so, and so his conviction should be reduced to attempted evidence-tampering. Again, this would make sense if we interpreted the terms "suppress" and "conceal" broadly. But, like the courts of our sibling states, we are persuaded to give a narrow interpretation to the terms "suppress" and "conceal". We are convinced that a broad reading of these terms would lead to results that are inexplicably harsh and probably not within the legislature's intent.

Tampering with physical evidence is a class C felony.[36] As was pointed out in *Delgado, Boice, Patton, Fuqua,* and *Sharpless,* if the words "suppress" and "conceal" are interpreted to cover actions such as tossing evidence to the ground, or tossing evidence out of a car window, or hiding evidence in one's clothing, then minor possessory offenses would often be converted to felonies with little reason. For example, persons under the age of 21 who possess or drink beer (a violation punishable only by a fine[37]) or who smoke cigarettes (another violation punishable only by a fine[38]) would be subjected to felony convictions and penalties if they tossed a can of beer from their vehicle or hid cigarettes in a pocket or purse when police officers approached.

As explained above, the New Jersey courts (in *Fuqua* and *Sharpless*) avoided such results by giving a limiting construction to their evidence-tampering statutes: these statutes do not apply to a defendant's attempt to hide or toss away evidence of an ongoing possessory offense. Although there may be merit to the New Jersey approach, the facts of Vigue's appeal do not require us to decide whether Alaska's evidence-tampering statute should be interpreted in a similar fashion.

We hold that, for purposes of construing AS 11.56.610(a), Vigue did not "suppress" or "conceal" the rocks of cocaine when he tossed or dropped them to the ground in the officer's presence. Accordingly, one of the theories of prosecution considered by the jury at Vigue's trial was invalid, and Vigue's conviction for tampering with physical evidence must be reversed.

*Conclusion*

Vigue's conviction for fourth-degree controlled substance misconduct (possession of cocaine) is AFFIRMED. Vigue's conviction for tampering with physical evidence is REVERSED.

---

**36.** AS 11.56.610(b).

**37.** AS 04.16.050.

**38.** AS 11.76.105; AS 11.81.900(b)(59).