130 P.3d 954 (2006)
Y.J., Appellant,
v.
STATE of Alaska, Appellee.
No. A-9021.
Court of Appeals of Alaska.
March 3, 2006.
*955 Jill C. Wittenbrader, Assistant Public Advocate, and Joshua P. Fink, Public Advocate, Anchorage, for the Appellant.
Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.
Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

OPINION
MANNHEIMER, Judge.
Following a bench trial in front of Superior Court Judge Dan A. Hensley, Y.J. was found to be a delinquent minor based on allegations that he, as a seventeen-year-old, carried a concealed firearm (fifth-degree weapons misconduct under AS 11.61.220(a)(6)), and that he also hid evidence of this crime (tampering with evidence under AS 11.56.610(a)).
These charges arose from an incident that occurred on the evening of July 17, 2004. Anchorage Police Officer Jack Carson and several other officers were investigating a shooting that had occurred earlier that day. The officers approached a group of young men and juveniles who were standing around a parked car. One of the juveniles, later identified as Y.J., began to back away from the officers and then turned and ran.
Y.J. ran hunched over, and he appeared to be holding something inside his pants. Although Officer Carson could not see this object, he suspected that it was a gun because Y.J. was holding the object at his hip.
Officer Carson lost sight of Y.J. several times as the boy rounded the buildings along Russian Jack Drive. During one of the times when Y.J. was out of the officer's sight, the boy was running along a wooden fence. Unbeknownst to Y.J., another officer was running parallel to Y.J. on the other side of the fence. This officer saw a handgun arc over the fence, rattle through the branches of a tree, and then fall to the ground at his feet.
In the meantime, Officer Carson continued to chase Y.J. The officer arrived at the parking area in front of a condominium building located at 1701 Russian Jack Drive. Y.J. *956 was nowhere to be seen. The officer asked a bystander where Y.J. had gone, and the bystander pointed to Unit D-1 of the condominium building. Officer Carson and several other officers posted themselves around the entrance to that unit.
Y.J. was indeed inside Unit D-1. Damon Shine and his 14-year-old daughter lived in this unit. The daughter heard someone come into the residence. When the girl went upstairs to find out who it was, she discovered Y.J. (with whom she was acquainted) in the upstairs bathroom. The girl told Y.J. to leave, but he refused. The girl then went outside, where she encountered the police officers.
Y.J. came out of the residence several minutes later, and the officers took him into custody.
Officer Randy Rhodes then entered the residence, looking for weapons. He discovered a holster under a bed on the second floor. When Damon Shine was asked about this holster, he confirmed that it did not belong to him or to anyone else in his family.
The police later learned that both the holster and the handgun (the one that was tossed over the fence) had been stolen approximately two years earlier. The holster was designed to hold that particular handgun.
At Y.J.'s trial, he contended that the State had failed to prove, beyond a reasonable doubt, that he was the person who tossed the gun over the fence or who placed the holster under the bed. Superior Court Judge Dan A. Hensley rejected these contentions. He found that Y.J. had in fact possessed the concealed handgun and holster, that Y.J. had tossed the gun over the fence, and that Y.J. had then hidden the holster under the bed in the condominium unit.
After his trial, Y.J. filed a motion for a partial judgement of acquittal. In this motion, Y.J. argued that even if he had tossed the gun over the fence, and even if he had hidden the holster under the bed, these acts did not constitute the crime of evidence tampering under AS 11.56.610(a). Judge Hensley denied this motion, and Y.J. now appeals Judge Hensley's decision. (Y.J. does not appeal Judge Hensley's finding that he committed fifth-degree weapons misconduct by possessing a concealed firearm.)
Y.J. argues that, under this Court's decision in Vigue v. State, 987 P.2d 204 (Alaska App.1999), he is entitled to a judgement of acquittal on the evidence tampering charge even if the State proved that he tossed the handgun over the fence and then hid the holster under the bed. For the reasons explained here, we need not resolve whether Y.J.'s act of tossing the handgun over the fence constituted evidence tampering, because we hold that Y.J.'s act of hiding the holster did constitute the offense of evidence tampering.

Did Y.J.'s act of tossing the handgun over the fence constitute the offense of evidence tampering as defined in AS 11.56.610(a)?
In Vigue, this Court held that a defendant's act of tossing drugs to the ground when he saw the police approaching did not constitute an act of "suppression", "concealment", or "removal" of evidence for purposes of Alaska's evidence tampering statute, AS 11.56.610(a). 987 P.2d at 210. And, after the briefing was completed in Y.J.'s case, this Court decided Anderson v. State, 123 P.3d 1110 (Alaska App.2005), another case involving the evidence tampering statute. In Anderson, we held that a defendant's act of tossing a handgun and ammunition from a car while he was being chased by the police did not constitute evidence tampering. Id. at 1118-19.
In Y.J.'s case, his act of tossing away the handgun while he was being chased by Officer Carson appears to be analogous to the conduct of the defendant in Anderson when he tossed the gun from the carconduct that we ruled did not constitute the actus reus of evidence tampering. The State argues, however, that Y.J.'s case is different because (1) Y.J. was out of Officer Carson's sight when he tossed the handgun away, and (2) Y.J. did not simply throw the gun down, but rather tossed the gun over a fence where he thought it would remain hidden. The State argues that it was pure fortuity that there was an officer on the other side of the fence who observed the gun fall. Otherwise, Y.J. might *957 have accomplished his intention of concealing his possession of the handgunindeed, perhaps concealing the handgun's very existencefrom the police.
The State offers plausible distinctions between the facts of Y.J.'s case and the facts of cases like Vigue and Anderson. On the other hand, one could plausibly argue that, from the standpoint of protecting police officers, we should not interpret the law so as to penalize armed suspects for tossing away their weapons during police chases.
However, we conclude that we need not resolve these issues, because Judge Hensley found Y.J. guilty of evidence tampering on a separate independent basis: Y.J.'s act of hiding the holster in the condominium unit. As we explain here, this latter conduct did constitute the offense of evidence tampering.

Y.J.'s act of concealing the holster under the bed constituted the offense of evidence tampering as defined in AS 11.56.610(a)
Y.J. argues that, as a legal matter, he did not "conceal" the holster because the police quickly located this holster when, following Y.J.'s surrender, they entered the residence and searched the residence for weapons. Y.J. argues that "a holster [placed] under a bed is as [likely] to [be discovered] as ... something [dropped] in plain view of a policeman. In both instances, there is almost no effort put into an attempt to hide ... the object." We disagree.
To the extent that Y.J. may be arguing that he did not intend to hide the holster when he placed it under the bed, he is disputing Judge Hensley's view of the factsin particular, Judge Hensley's verdict that Y.J. put the holster under the bed "with intent to impair its verity or availability in ... a criminal investigation" (the mens rea required by the evidence tampering statute).
The "substantial evidence" test governs appellate review of verdicts in judge-tried cases. Helmer v. State, 608 P.2d 38, 39 (Alaska 1980). Thus, Y.J. must show that there was no "substantial evidence" to support Judge Hensley's verdict.
Under the substantial evidence test, we must uphold Judge Hensley's verdict if the record contains evidence that "a reasonable mind might accept as adequate to support [the challenged] conclusion".[1] We do not re-weigh the evidence or choose between competing inferences; we only determine whether evidence exists to support the judge's conclusion.[2]
Here, there is ample evidence that Y.J. placed the holster under the bed in the hope that the police would not find it. As explained above, Y.J. ran into another family's residence to escape from the police. By this maneuver, he did temporarily frustrate police efforts to locate him. While in the residence, Y.J. placed his holster under a bed. A few minutes later (after Y.J. was discovered and was asked to leave by a resident of the house), Y.J. emerged from the residence and surrendered to the police. But because he left the holster behind in the residence, Y.J. had no further physical evidence on his person to connect him to the possession of the concealed handgun.
From these facts, Judge Hensley could justifiably conclude that when Y.J. placed the holster under a bed in a house that was not his, Y.J. did so for the purpose of hiding the holster from the police, thus "impair[ing] its... availability in ... a criminal investigation".
This leaves the legal issue of whether Y.J.'s conduct constituted the actus reus of evidence tampering.
Y.J. argues that he never actually "concealed" the holster because the police located it so quickly when they swept the condominium unit for weapons. But Y.J.'s argument overlooks the fact that he ran into another family's residence and, while he was out of sight of the police, he put the holster in a place where the police would not find it unless they entered the residence and searched. Even after the police located the holster, *958 they had to question Damon Shine in order to ascertain that the holster did not belong to a member of his family.
Given these circumstances, the fact that the police quickly found the holster in its hiding place does not defeat a finding that Y.J.'s conduct constituted a concealment of the holster for purposes of the evidence tampering statute.
Y.J. argues that we should follow the New Jersey courts by limiting our evidence tampering statute so that it does not apply to efforts to hide evidence of an on-going possessory offense.[3] But this suggested interpretation of the statute would not help Y.J. His act of concealing the holster under the bed in the Shine residence occurred after his possessory offense (carrying a concealed firearm) had ended. Not only had Y.J. tossed the handgun away, but he had also reached a place of temporary refuge (the condominium unit); thus, there was a break in the action. With the police still searching for him, Y.J. then attempted to rid himself of an article (the holster) that tended to circumstantially prove that he had earlier possessed the concealed firearmso that when he emerged from the residence and surrendered to the police, he would not be carrying the tell-tale holster.
Our decision in Anderson suggests that Y.J. might not have been guilty of evidence tampering if he had tossed away the holster and the handgun at the same time. Thus, it may appear incongruous to hold Y.J. liable for evidence tampering because he waited until a few minutes later to conceal the holster. We base our decision on the fact that there was a break in the action, that Y.J. had reached a place of temporary refuge, and that Y.J. hid the holster in such a manner that it could not definitely be linked to him until the police interviewed the home owner and verified that the holster did not belong to anyone living there.
There must be a point at which an act of concealing evidence is no longer deemed merely an aspect of the underlying possessory offense, but rather takes on independent legal significance. Without some sort of dividing line, either all acts of concealing evidence of a possessory offense would be evidence tampering, or none would. We are not prepared to definitively draw this line for all future cases, but we do hold that, under the facts of this case, Y.J.'s act of hiding the holster in the condominium unit crossed the line and became an independent offense.

Y.J.'s argument that the evidence tampering statute imposes a disproportionate penalty for acts of evidence concealment relating to a misdemeanor
Y.J. raises one last argument: the assertion that it is unfair to impose felony penalties on a person for concealing evidence of a misdemeanor (in this case, the class B misdemeanor of fifth-degree weapons misconduct).
Strictly speaking, Y.J. does not face felony penalties for evidence tampering, since he was a minor prosecuted under Alaska's delinquency laws. However, the fact that Y.J. has been adjudicated a delinquent based on felony conduct does have more severe repercussions than if he had been adjudicated a delinquent based on misdemeanor conduct. See, for example, AS 11.61.200(a)(1), which declares that the prohibition on felons carrying concealable firearms applies to persons who have been declared delinquent based on felony conduct. See also AS 12.55.155(c)(19), which declares that a felony sentence can be aggravated if the defendant was previously adjudicated a delinquent based on felony conduct. We therefore turn to the merits of Y.J.'s argument.
In Anderson and in Vigue, we pointed out the seeming illogic of convicting someone for a felony when they try to discard or conceal evidence of a minor offense.[4] Based on the anomalous results that would occur if we interpreted the evidence tampering statute broadly in situations where people discarded *959 or hid evidence of an ongoing minor possessory offense, we concluded that the legislature had not intended for the evidence tampering statute to apply to those situations.
But our decisions in Anderson and Vigue are ultimately based on statutory construction. When a question of law is governed by statute, it is not our role to adopt the social policy that we deem best. Rather, our role is to interpret the statuteto ascertain the legislature's intent, and then to construe the statute so as to implement that intent (assuming no violation of the constitution).[5]
Here, we have already resolved the relevant issue of statutory interpretation: we have concluded that Y.J.'s act of concealing the holster falls within the scope of the evidence tampering statute.
We acknowledge that, in some instances, a defendant's punishment for evidence tampering can be much more severe than the defendant's punishment for the underlying crime to which the evidence pertains. The legislature has declared that every act of evidence tampering is a felony, even when the underlying offense to which that evidence relates is only a misdemeanor or even a "violation" (a non-criminal offense that carries only a fine as punishment).[6]
Indeed, the evidence tampering statute applies to the concealment, suppression, removal, destruction, mutilation, or alteration of physical evidence pertinent to any "official proceeding". An "official proceeding" is defined as "[any] proceeding heard before a legislative, judicial, administrative, or other governmental body or official authorized to hear evidence under oath." AS 11.81.900(b)(41). Thus, the evidence tampering statute covers physical evidence that is pertinent to civil lawsuits and administrative proceedings, not just criminal and quasi-criminal prosecutions.
Y.J. argues that it is unfair, and bad policy, to make every act of evidence tampering a felony. But this is a question of social policy entrusted to the judgement of the legislature. Whatever may be the merits of Y.J.'s position, he must address his arguments to the legislature, not to this Court.

Conclusion
The judgement of the superior court is AFFIRMED.
NOTES
[1] Smith v. Sampson, 816 P.2d 902, 904 (Alaska 1991); Storrs v. State Medical Board, 664 P.2d 547, 554 (Alaska 1983).
[2] Smith, 816 P.2d at 904; Storrs, 664 P.2d at 554.
[3] See State v. Sharpless, 314 N.J.Super. 440, 715 A.2d 333, 343 (App.1998); State v. Fuqua, 303 N.J.Super. 40, 696 A.2d 44, 47-48 (App.1997). We discussed both of these cases in Vigue, 987 P.2d at 208-09.
[4] Anderson, 123 P.3d at 1118; Vigue, 987 P.2d at 211.
[5] Progressive Insurance Co. v. Simmons, 953 P.2d 510, 516 (Alaska 1998); State v. Roberts, 999 P.2d 151, 153 (Alaska App.2000); State v. McCallion, 875 P.2d 93, 98-99 (Alaska App.1994).
[6] See AS 11.81.900(b)(62).