715 A.2d 333 (1998)
314 N.J. Super. 440
STATE of New Jersey, Plaintiff-Respondent,
v.
Ronnie R. SHARPLESS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 15, 1997.
Decided August 4, 1998.
*335 Ivelisse Torres, Public Defender, for defendant-appellant (Albert D. Barnes, Designated Counsel, of counsel and on the brief).
John Kaye, Monmouth County Prosecutor, for plaintiff-respondent (Mark P. Stalford, Assistant Prosecutor, of counsel and on the brief).
Before Judges PETRELLA, SKILLMAN and EICHEN.
*334 The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to decide whether the police may stop and conduct a patdown search of a person whose physical description matches the description contained in an anonymous informant's tip concerning a man armed with a gun, even though the tip is not corroborated by observations of the suspect's conduct which correspond with conduct predicted by the informant. This appeal also requires us to decide whether the act of hiding or discarding criminal contraband upon the approach of a police officer constitutes tampering with evidence within the intent of N.J.S.A. 2C:28-6.
Defendant was indicted for possession of heroin, in violation of N.J.S.A. 2C:35-10a(1), possession of heroin with the intent to distribute, in violation of N.J.S.A. 2C:35-5b(3), *336 and tampering with evidence, in violation of N.J.S.A. 2C:28-6. After an evidentiary hearing, the trial court denied defendant's motion to suppress. Thereafter, a jury found defendant guilty of all charges. The court sentenced defendant to an extended term of ten years imprisonment, with five years of parole ineligibility, as well as the statutorily mandated penalties and fees, for possession of heroin with the intent to distribute. In addition, the court imposed a concurrent term of five years imprisonment, with two and a half years of parole ineligibility, for tampering with evidence. The court merged defendant's conviction for possession of heroin into his conviction for possession with the intent to distribute.
At the hearing on defendant's motion to suppress, Officer Raymond Tilton of the Asbury Park Police Department, testified that he received a radio dispatch shortly after noon on February 15, 1995, reporting that someone had seen a black man wearing a green jacket with a hood armed with a handgun in the area of Atkins Avenue and Adams Street. It was later revealed that this dispatch was based on a telephone tip from an anonymous informant. Officer Tilton drove to the location mentioned in the dispatch and saw a man later identified as defendant, who fit the description provided by the informant, standing on a mound of dirt with his hands in his overcoat pockets. When Officer Tilton approached him, defendant took his right hand out of his pocket and started to walk away. At this point Officer Tilton hollered to defendant to take his other hand out of his pocket and to get down on the ground. However, defendant responded by saying: "[W]hat for, I didn't do nothing." Officer Tilton kept yelling at defendant to take his hand out of his pocket and get down on the ground but defendant did not respond. Officer Tilton and another officer who had arrived on the scene pulled out their guns and repeated this command, which defendant then obeyed. The officers conducted a patdown search for weapons, which did not reveal anything. Nevertheless, the officers placed defendant under arrest for "alarming conduct," put handcuffs on him and placed him in the police car. Officer Tilton returned to the area where defendant had been standing to look for the weapon. He failed to find a weapon in that search but did find twenty-three decks of heroin in glassine bags. The police took defendant to police headquarters, where they conducted a further search which revealed a glassine bag containing heroin in his overcoat pocket. This bag had the same markings as the twenty-three bags found near the dirt mound where defendant had been standing.
Based on this evidence, the trial court upheld the validity of defendant's arrest and the search incident to that arrest. The court concluded that the police had a reasonable basis for detaining defendant and ordering him to take his hand out of his pocket and get down on the ground, and that defendant's disobedience of that command provided probable cause to arrest him for a violation of N.J.S.A. 2C:33-2a(2). A jury found defendant guilty of all charges based on substantially similar testimony presented at trial.
On appeal, defendant makes the following arguments:
I. THE ARREST OF THE DEFENDANT AND THE SEARCH PURPORTEDLY INCIDENT TO THE ARREST WERE UNLAWFUL. (Raised Below).
II. THE COURT COMMITTED REVERSIBLE ERROR IN FAILING TO DISMISS THE CHARGES OF EVIDENCE TAMPERING. (Partially Raised Below).
III. THE COURT COMMITTED REVERSIBLE ERROR IN ADMITTING THE TESTIMONY OF THE STATE'S MODUS OPERANDI EXPERT. (Not Raised Below).
IV. THE COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GIVE LIMITING INSTRUCTIONS TO THE JURY ON THE ROLE OF AND WEIGHT TO BE GIVEN THE TESTIMONY OF THE STATE'S MODUS OPERANDI EXPERT. (Not Raised Below).
V. THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING THE MAXIMUM EXTENDED *337 SENTENCE AND PAROLE DISQUALIFIER. (Not Raised Below).
We affirm the denial of defendant's motion to suppress. We also reject defendant's arguments relating to the State's expert opinion evidence and the sentence. Accordingly, we affirm defendant's conviction and sentence for possession of heroin with the intent to distribute. However, we conclude that defendant's discard of the twenty-three decks of heroin upon the approach of the police did not constitute tampering with evidence and consequently reverse his conviction for that offense.

I
Defendant makes three arguments relating to the denial of his motion to suppress. First, he argues that the police did not have the reasonable suspicion required to stop him because the source of the information that a person fitting his description was in possession of a handgun in the area of Atkins Avenue and Adams Street was an unknown informant. Second, defendant argues that even if the police had the reasonable suspicion required to stop him, his subsequent conduct did not establish the probable cause required for an arrest and search incident to an arrest. Third, defendant argues that the search of the area where he had been standing prior to his arrest, which revealed the twenty-three decks of heroin in glassine bags, was "unconstitutionally broad" because the area was not within his control.
In Terry v. Ohio, 392 U.S. 1, 22, 24, 88 S.Ct. 1868, 1880-81, 20 L.Ed.2d 889, 906-08 (1968), the Court held that "a police officer may in appropriate circumstances ... approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest," and that the officer may conduct a reasonable search for weapons if he is "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others."
A telephone tip from an unknown informant does not provide the objectively reasonable suspicion required for a Terry stop and frisk unless it is sufficiently corroborated by other evidence. Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415, 110 L. Ed.2d 301, 308 (1990). In White, the police received an anonymous telephone tip that defendant "would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case." Id. at 327, 110 S.Ct. at 2414, 110 L.Ed.2d at 306-07. The Court stated that "a tip such as this one, standing alone, would not `warrant a man of reasonable caution in the belief' that [a stop] was appropriate." Id. at 329, 110 S.Ct. at 2416, 110 L.Ed.2d at 308 (quoting Terry, supra, at 22, 88 S.Ct. at 1868, 20 L.Ed.2d at 889) (alteration in original). However, the Court concluded that the police officer's observations of defendant's conduct, which corresponded with some of the conduct predicted by the informant, provided sufficient corroboration to establish reasonable suspicion:
What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside informationa special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.
...
[W]e conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car.
[Id. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.]
Under White, an anonymous tip that a person of a particular race and body type and wearing specifically described clothing is *338 selling drugs at a particular location does not provide the reasonable suspicion required for a Terry stop, even if the police observe a person fitting that description at the location, because such a tip "contain[s] no `details of future actions of third parties ordinarily not easily predicted.'" United States v. Roberson, 90 F.3d 75, 80 (3rd Cir.1996) (quoting Alabama v. White, supra, 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310)); see also State v. Zutic, 155 N.J. 103, 713 A.2d 1043 (1998) (corroborated informant's tip insufficient under totality of circumstances to establish probable cause for search of automobile); State v. Smith, 155 N.J. 83, 713 A.2d 1033 (1998) (same); see generally 4 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment (3d ed.1996) § 9.4(h) at 228.
However, subsequent to White, four federal circuit courts of appeals have concluded that because of the imminent danger posed by firearms, an anonymous tip that a person is armed should be treated differently than a tip concerning other forms of criminal activity and that such a tip may provide the basis for a stop and frisk even though the informant does not make any prediction of future behavior which is verified by police observations. United States v. DeBerry, 76 F.3d 884 (7th Cir.1996); United States v. Gibson, 64 F.3d 617, 619-25 (11th Cir.1995), cert. denied, 517 U.S. 1173, 116 S.Ct. 1580, 134 L.Ed.2d 678 (1996); United States v. Clipper, 973 F.2d 944 (D.C.Cir.1992), cert. denied, 506 U.S. 1070, 113 S.Ct. 1025, 122 L.Ed.2d 171 (1993); United States v. Bold, 19 F.3d 99 (2d Cir.1994); see also Roberson, supra, 90 F.3d at 81 n. 4; see generally Wayne R. LaFave, supra, § 9.4(h) at 229-301. But see Commonwealth v. Alvarado, 423 Mass. 266, 667 N.E.2d 856 (1996).
In Clipper, which is illustrative of these cases, the police received an anonymous telephone call reporting that a black man wearing a green and black jacket was armed with a gun at a particular location. The police went to that location and observed a man fitting the description provided by the informant. The police approached the man with their guns drawn and ordered him to place his hands on a nearby fence. The police then conducted a patdown search which did not result in the discovery of a weapon but did reveal a wad of cash. At this point, the defendant knocked the cash out of the hands of one of the officers and fled the scene. The police chased and apprehended the defendant and during an ensuing struggle observed cocaine in his hand. As a result, the defendant was arrested and charged with drug offenses. In rejecting the defendant's argument that the initial stop and patdown search for weapons violated his Fourth Amendment rights, the court said:
[T]he totality of the circumstances to which the Court refers in Alabama v. White must include those in which the anonymous informant makes no predictions, but provides the police with verifiable facts while alerting them to an imminent danger that the police cannot ignore except at risk to their personal or the public's safety.
....
The hazards that the illegal use of firearms presents to officer and citizen alike are well documented. Therefore, a police officer responding to a tip involving guns may properly take these hazards into consideration when balancing the suspect's interests against the "need for law enforcement officers to protect themselves and other prospective victims of violence[.]" Terry, 392 U.S. at 24, 88 S.Ct. at 1881 [, 20 L.Ed.2d at 907-08]. As we pointed out in McClinnhan, an officer who has been able to corroborate every item of information given by an anonymous informant other than actual possession of a weapon is faced with an "unappealing choice." McClinnhan, 660 F.2d at 502. He must either stop and search the individual or "at best follow him through the streets ... hoping he [will] commit a crime, or at least brandish the weapon, out of doors," where the police can intervene. Id. at 502-03.
This element of imminent danger distinguishes a gun tip from one involving possession of drugs. ...
Here, ... the police received an anonymous tip providing a detailed description of the appearance, clothing, and location of a man who reportedly possessed a weapon. *339 Officers at the scene were able to corroborate all of the innocent details of the tip. In these circumstances, we conclude that a reasonable trier of the facts could find that the officers had a reasonable suspicion sufficient to justify a Terry stop and search.

[973 F.2d at 949-51.]
Although the Supreme Court of Pennsylvania has concluded based on state constitutional grounds that the police must have the same reasonable suspicion that would be required with respect to any other form of criminal activity to conduct a stop and frisk based on an anonymous tip about a "man with a gun" Commonwealth v. Hawkins, 547 Pa. 652, 692 A.2d 1068 (1997), our Supreme Court has not interpreted the New Jersey Constitution to afford greater protection than the Fourth Amendment with respect to investigatory stops and patdown searches for weapons incident to such stops. See State v. Valentine, 134 N.J. 536, 543, 636 A.2d 505 (1994). Moreover, even though decisions of the federal courts of appeals interpreting the requirements of the United States Constitution are not binding upon state courts, see State v. Coleman, 46 N.J. 16, 36-37, 214 A.2d 393 (1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966), we are persuaded by the reasoning of Clipper and the other federal circuit courts' decisions that under White's totality of the circumstances test, an anonymous tip relating to possession of a gun may justify an investigatory stop and patdown search for weapons even though the tip is not corroborated by police observations which conform with the informant's predictions regarding the suspect's future conduct.
Applying the reasoning of the circuit courts' decisions, we conclude that the police had an objectively reasonable basis to travel to the location where the unknown informant told them they would find an armed person and to stop and frisk defendant when his appearance matched the description the informant had provided. The police cannot simply ignore information that an armed person is standing on a street corner, and when the police see someone whose appearance matches that of the alleged armed person, this provides a reasonable basis for them to stop and question the person and at least in some circumstances to conduct a patdown search for weapons. In this case, defendant's failure to accede to Officer Tilton's initial demand that he remove his hand from his pocket and his attempt to walk away from the officer provided an objectively reasonable basis for suspicion that the informant's tip was accurate and that defendant in fact possessed a weapon. Cf. State v. Citarella, 154 N.J. 272, 281, 712 A.2d 1096 (1998) ("[F]light adds weight to ... already existing reasonable articulable suspicion" required to justify a Terry stop). In addition, defendant's failure to promptly respond to the command to take his hand out of his pocket provided a reasonable basis for the police officers to direct him to get down on the ground so that they could conduct a search for weapons without undue danger to themselves. See United States v. Jones, 973 F.2d 928, 931 (D.C.Cir.1992), aff'd on rehearing en banc on unrelated issue, 997 F.2d 1475 (D.C.Cir.1993), cert. denied, 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994); United States v. Laing, 889 F.2d 281, 285-86 (D.C.Cir.1989), cert. denied, 494 U.S. 1069, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990); cf. State v. Johnson, 274 N.J.Super. 137, 154, 643 A.2d 631 (App.Div.) ("[W]here an officer fears for his or her safety, the officer may be justified in taking action to ensure that the suspect does not engage in harmful conduct."), certif. denied, 138 N.J. 265, 649 A.2d 1285 (1994). Therefore, the trial court correctly rejected defendant's challenge to the validity of the stop and frisk.
We turn next to the validity of the search incident to defendant's arrest which revealed the bag of heroin in the pocket of his overcoat. In upholding the validity of that search, the trial court relied upon State v. Doss, 254 N.J.Super. 122, 130-32, 603 A.2d 102 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992), which holds that a suspect's resistance to a Terry stop and frisk may constitute interference with the performance of an official function, within the meaning of N.J.S.A. 2C:29-1. However, we find it unnecessary to decide whether the rationale of Doss would apply to this case because defendant's arrest and the search *340 incident to defendant's arrest is sustainable on other grounds.
As previously discussed, the unknown informant's tip provided the police with the reasonable suspicion required to stop and frisk defendant. Although the frisk did not reveal a weapon, the same reasonable suspicion which justified the stop also justified defendant's detention for a brief additional period while the police searched the area where he had been standing to determine whether he had discarded a weapon. Compare State v. Dickey, 152 N.J. 468, 475-77, 706 A.2d 180 (1998). The search of that area revealed twenty-three bags of heroin which defendant had apparently thrown on the ground as the police approached. Therefore, even if defendant's hesitation in obeying the police officer's commands to take his hands out of his pockets and get down on the ground did not provide probable cause for an arrest for a violation of N.J.S.A. 2C:33-2a(2) or N.J.S.A. 2C:29-1, the discovery of drugs was not the product of a search incident to that arrest but rather a search of the mound where defendant had been standing which could have been conducted independent of the arrest. Under these circumstances, the invalidity of the arrest would not require the suppression of the cocaine discovered on the mound. See United States v. Eylicio-Montoya, 70 F.3d 1158, 1164-67 (10th Cir.1995); State v. Casimono, 250 N.J.Super. 173, 186-87, 593 A.2d 827 (App.Div.1991), certif. denied, 127 N.J. 558, 606 A.2d 370, cert. denied, 504 U.S. 924, 112 S.Ct. 1978, 118 L.Ed.2d 577 (1992). It was only after the discovery of those drugs that defendant was transported to the police station and subjected to the search which revealed the bag of heroin with markings that matched those on the twenty-three bags found in the area where he had been standing.
Defendant's argument that the search of the area where he had been standing was invalid because that area was not within his reach and control at the time of the search is clearly without merit. R. 2:11-3(e)(2). The search of that area was not a search incident to an arrest but rather a protective search for the weapon which according to the informant had been in defendant's possession. See Terry, supra, 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. If defendant had a weapon and discarded it when the police approached him, he could have rearmed himself when the police released him, or some other person, including a child, could have found and used the weapon. In any event, defendant had no constitutionally protected privacy right with respect to the mound of dirt where he had been standing, because it was a public area that the police could search at any time. See Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Defendant also had no protected interest in the drugs once they were discarded. State v. Farinich, 179 N.J.Super. 1, 5-7, 430 A.2d 233 (App.Div. 1981), aff'd o.b., 89 N.J. 378, 446 A.2d 120 (1982).
Accordingly, we affirm the denial of defendant's motion to suppress.

II
Defendant argues that the trial court committed reversible error in allowing the testimony of the State's "modus operandi" expert. Defendant also argues that the trial court committed reversible error in failing to give limiting instructions concerning the jury's use of this expert testimony.
"[E]xpert opinion is admissible if the general subject matter at issue, or its specific application, is one with which an average juror might not be sufficiently familiar, or if the trial court determines that the expert testimony would `assist the jury in comprehending the evidence and determining issues of fact.'" State v. Berry, 140 N.J. 280, 292-93, 658 A.2d 702 (1995) (quoting State v. Odom, 116 N.J. 65, 70, 560 A.2d 1198 (1989)). Expert opinion testimony may "encompass[ ] ultimate issues to be decided by the trier of fact." Id. at 297, 658 A.2d 702. However, it is impermissible for "an expert's opinion [to be] expressed in such a way as to emphasize that the expert believes the defendant is guilty of the crime charged under the statute." Odom, supra, 116 N.J. at 80, 560 A.2d 1198. Thus, "[i]n drug prosecutions, ... courts ... exercise caution in determining whether expert testimony touching on ultimate *341 issues properly was admitted at trial." Berry, supra, 140 N.J. at 298, 658 A.2d 702. Moreover, when expert opinion testimony is introduced, "especially where the record includes both an innocent explanation for defendant's conduct as well as an expert witness's incriminating opinion about the same conduct, the trial court should carefully instruct the jury in the context of the evidence about its duty to decide whether to accept or reject the opinion of the expert witness." Id. at 301, 658 A.2d 702.
Detective Wesley Mayo of the Monmouth County Prosecutor's Office gave expert opinion testimony in the form of an answer to a lengthy hypothetical question which purportedly included the facts established by the State's other evidence:
Q. Mid February, 1995, in the afternoon in Asbury Park, the Asbury Park Police get a report of a black male in a green jacket armed with a handgun.
Upon arrival the officersa black male fitting the description is observed walking in the area. He at one point is standing on what's described as a hill of dirt, at one point in time he looks at the police officer, the black male takes his hand out of his pocket, continues walking. Officer parks the car, yells at the black male to stop. Black male says for what? Continues walking. Black male then puts his hands in his coat.
The Officer orders the black male to the ground and displays a revolver and the black male refuses. He says for what? I didn't do anything. The black male is again told to take his hands out of his pocket and get down on the ground.
Another officer about this time approaches. These orders are repeated to the black male at which point he eventually does hit the ground. Black male is checked for weapons and none is found. He is then handcuffed and arrested. He's put in patrol car and the officers look for a gun in the area of the hill where the individual had been standing and no gun is located. However, where the black male had been earlier walking by the hill there was found 23 glassine bags of heroin which is labeled in red "TV Guide."
Later on at headquarters the individual is searched thoroughly and in his jacket pocket is found one glassine bag which is also heroin. This glassine bag is also labeled "TV Guide." There's also $68.62 found on the individual at headquarters in the following denominations one $20 bill, three, $10 bills, three, $5 bills, three $1 bills, two quarters, one dime and two pennies. Okay.
The evidencethe heroin is tested at the laboratory and 23 bags turns out to be 8 point 89 grams of heroin, and the one glassine bag is 0 point 07 grams of heroin.
Based upon those facts and narcotics which I'll show you in a minute, do you have an opinion as to whether or not the individual in that scenario possessed the heroin for personal use or possessed the heroin for the purpose of possessing it with intent to distribute?
A. Possession with intent.
Defendant argues that this hypothetical question "covertly presumed the disputed and unproven allegation that the heroin on the hill was the Defendant's." However, defendant did not object either to the form or the content of the hypothetical question through which Detective Mayo's expert opinion was elicited. Therefore, defendant waived whatever objection he may have had to this question. We are also satisfied that even if Detective Mayo's testimony exceeded the scope of expert opinion evidence permitted under Berry, it did not result in the denial of a fair trial. See State v. Macon, 57 N.J. 325, 338, 273 A.2d 1 (1971).
Although defendant argues that the trial court committed reversible error in failing to give the jury a special instruction with respect to its consideration of Detective Mayo's expert opinion testimony, he did not request or object to the court's failure to give such an instruction. Therefore, defendant's failure to request any supplemental instruction regarding Detective Mayo's testimony indicates that at the time of trial defendant considered the court's general credibility instruction to be sufficient. See State v. Baldwin, *342 296 N.J.Super. 391, 400-01, 686 A.2d 1260 (App.Div.), certif. denied, 149 N.J. 143, 693 A.2d 112 (1997). Defendant's failure to request any supplemental instruction also deprived the court of "an opportunity to remedy the omitted instruction before the case went to the jury." State v. Cordero, 293 N.J.Super. 438, 442, 681 A.2d 114 (App.Div. 1996), certif. denied, 147 N.J. 577, 688 A.2d 1052 (1997).

III
Defendant argues that the State did not present sufficient evidence to support his conviction for evidence tampering.
This offense is proscribed by N.J.S.A. 2C:28-6, which provides in pertinent part:
A person commits a crime of the fourth degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
(1) Alters, destroys, conceals or removes any article, object, record, document or other thing of physical substance with purpose to impair its verity or availability in such proceeding or investigation ....
The State's theory in support of this charge was that defendant's act of throwing the twenty-three bags of heroin onto the ground constituted "conceal[ment]" or "remov[al]" of the heroin at a time when the jury could find defendant "believ[ed] [a police] investigation [was] about to be instituted."
There is no New Jersey decision which addresses the question whether the act of discarding criminal contraband upon the approach of a police officer constitutes evidence tampering within the intent of N.J.S.A. 2C:28-6. Moreover, even though this section is derived from the Model Penal Code, we have been able to locate only a handful of decisions in other states interpreting similar language in other states' criminal codes. In Commonwealth v. Govens, 429 Pa.Super. 464, 632 A.2d 1316, 1327-29 (1993), alloc. den., 539 Pa. 675, 652 A.2d 1321 (1994), the court held that by flushing drugs down the toilet when the police knocked on his door, the defendant "destroy[ed]" evidence in order to impair its availability in a police investigation within the intent of Pennsylvania's law prohibiting tampering with evidence. In Commonwealth v. Morales, 447 Pa.Super. 491, 669 A.2d 1003 (1996), the court held that Pennsylvania's law was also violated when a defendant swallowed drugs while being apprehended by the police because the evidence supported a finding that defendant's intent was to conceal the drugs. See also Spector v. State, 746 S.W.2d 945 (Tex.App. 1988) (reversing conviction because State failed to prove charge that defendant had "destroyed" evidence, but implying that defendant who retrieved marijuana cigarette which had been seized by the police, then tore it in half and threw it in a ditch, could have been found guilty if she had been charged with "altering" or "attempting to destroy" evidence). In Frayer v. People, 684 P.2d 927, 928-29 (Colo.1984), the court affirmed a conviction for tampering with evidence of a defendant who, subsequent to being placed under arrest for a drug offense, snatched the drugs from one of the arresting officers and threw them on the ground, causing the bottle containing the drugs to break. However, in Commonwealth v. Delgado, 544 Pa. 591, 679 A.2d 223 (1996), the court held that a defendant who threw drugs on top of a small outbuilding while fleeing from the police could not be found guilty of tampering with evidence:
[Defendant's] act of discarding contraband in plain view of the police does not rise to a level of conduct that constitutes the destruction or concealment of evidence as contemplated by the statute. The act of throwing the bag of cocaine while being chased by the police was nothing more than an abandonment of the evidence.

[Id. at 225, 679 A.2d 223.]
We reached a similar conclusion in interpreting N.J.S.A. 2C:29-3b(1), which provides in pertinent part that
A person commits an offense if, with purpose to hinder his own apprehension, prosecution, conviction or punishment, he:
(1) Suppresses, by way of concealment... any evidence of the crime ... which might aid in his discovery or apprehension or in the lodging of a charge against him.
In State v. Fuqua, 303 N.J.Super. 40, 46-47, 696 A.2d 44 (App.Div.1997), we held that a person charged with drug possessory *343 charges could not be found guilty of a violation of this section based on the concealment of the drugs in his socks:
Insofar as this subsection relates to the concealment or destruction of evidence of a person's completed crime, such as tampering with a crime scene, disposing of a murder weapon or the like, the statute would have applicability. Where, however, the crime is an ongoing possessory offense, such as defendant's possession of the cocaine in this case, we question the application of this statute.
Under what appears to be the State's theory, defendant would have been required to have the cocaine in plain view in order to avoid committing this crime because, by placing the cocaine in his socks, defendant allegedly committed a separate indictable offense. ... If the State is correct, all illegal substances, weapons, and even illicit reading material, would be required to be carried in plain view or else the possessor could be convicted of a third-or fourth-degree crime or of a disorderly persons offense, in addition to any other substantive offense. ...
We therefore construe the language of this subsection to apply to evidence of crimes other than ongoing possessory crimes where the possession of the items or substance at that time is chargeable as a separate offense. The statute, where it speaks of concealment of "evidence of the crime" with the purpose of hindering the actor's apprehension, N.J.S.A. 2C:29-3b(1), is sensibly construed to refer to evidence of a completed criminal act, not a current possessory crime.
Similarly, we conclude that a person who possesses drugs may not be found guilty of tampering with evidence simply because he discards or hides the drugs upon the approach of a police officer. Persons who possess criminal contraband generally seek to keep it hidden from others, especially the police. It is common, for example, for drug dealers to maintain their supply of drugs someplace other than on their persons. It is also common for persons who possess criminal contraband to discard it upon the approach of the police. Consequently, if such conduct were held to constitute tampering with evidence, any person in possession of contraband who took any steps to prevent the police from discovering the contraband could be charged not only with the possessory offense but also with tampering with evidence. Absent a clearer indication that this was the Legislature's intent in enacting N.J.S.A. 2C:28-6, we decline to reach this conclusion. Instead, consistent with the court's interpretation of N.J.S.A. 2C:29-3b(1) in Fuqua, we construe the phrase "conceal[ment]" of "any article ... with the purpose to impair its availability in [an investigation]" in N.J.S.A. 2C:28-6 to refer only to "evidence of a completed criminal act, not a current possessory crime." Fuqua, supra, 303 N.J.Super. at 47, 696 A.2d 44. Under this analysis, defendant's abandonment of his drug supply occurred during the course of his ongoing possession of heroin with the intent to distribute and consequently did not constitute tampering with evidence.

IV
Finally, we find no abuse of discretion in the court's imposition upon defendant of the maximum extended term sentence for a third degree offense. We note that in the five year period preceding the commission of this offense, defendant had been convicted of three separate indictable offenses, including one for possession of a controlled dangerous substance with the intent to distribute. In fact, defendant was paroled only a month and a half before the commission of this offense.
Accordingly, we affirm defendant's conviction and sentence for possession of heroin with the intent to distribute, but reverse his conviction for tampering with evidence.