**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0896-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PAUL A. CARTER,
 a/k/a PAUL ANTHONY
CARTER, PAUL A. CARIER,
PDOT,

    Defendant-Appellant.

_____

Submitted April 14, 2021 – Decided July 15, 2021

Before Judges Fuentes, Whipple and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 17-05-0203.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

John T. Lenahan, Salem County Prosecutor, attorney for respondent (David M. Galemba, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Paul A. Carter was convicted of murder, aggravated assault, tampering with evidence, resisting arrest, drug, and weapons offenses for the execution-style shooting death of Anthony Johnson on a Salem City street in November 2016. During the seven-day trial, the State presented the testimony of fourteen witnesses and introduced in evidence more than one hundred exhibits. But the case turned on the multiple video and audio recordings: the murder was depicted on home surveillance video; defendant's spontaneous admissions were captured on the police car's mobile video recorder (MVR). And two local officers on routine patrol saw a muzzle flash, heard the shots, chased defendant, and arrested him immediately after they saw him toss the murder weapon into a pile of leaves. Defendant was sentenced to an aggregate prison term of sixty-five years with a parole disqualifier of fifty-two and one-half years.

Defendant now appeals, arguing:

POINT I

THE EVIDENCE CLEARLY INDICATED THAT THE TRIAL COURT SHOULD HAVE CHARGED AGGRAVATED AND RECKLESS MANSLAUGHTER AS LESSER-INCLUDED OFFENSES. SEE STATE V. JENKINS, 178 N.J. 347

2

(2004); <u>U.S. Const.</u> Amend. XIV; <u>N.J. Const.</u> Art. I., ¶ 1, 10.

(Not raised below)

POINT II

THE STATE'S REPEATED PLAYBACK DURING SUMMATION OF THE HARMFUL VIDEO RECORDINGS, WHICH UNDULY EMPHASIZED THE STATE'S CASE, AND THE COURT'S FAILURE TO PROVIDE A CAUTIONARY INSTRUCTION, WAS PLAIN ERROR.

(Not raised below)

POINT III

THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT DEFENDANT'S "MERE PRESENCE" NEAR WHERE THE GUN WAS DISCOVERED WAS NOT IN ITSELF, WITHOUT MORE, PROOF BEYOND A REASONABLE DOUBT THAT DEFENDANT WAS GUILTY, DEPRIVED DEFENDANT OF A FAIR TRIAL. <u>U.S. Const.</u> Amend. XIV; <u>N.J. Const.</u> Art. I., ¶ 1, 10.

[(Partially raised below)]

POINT IV

THE COURT COMMITTED REVERSIBLE ERROR IN FAILING TO DISMISS TAMPERING WITH EVIDENCE BECAUSE THIS CRIME IS NOT COMMITTED BY SIMPLY DISCARDING A WEAPON UPON APPROACH OF A POLICE OFFICER.

([Partially] raised below)

A-0896-19

REGARDING THE DEFENDANT'S SENTENCE, THE COURT ABUSED ITS DISCRETION AND DOUBLE[-]COUNTED EVIDENCE IN FINDING AGGRAVATING FACTOR ONE.   ALSO, THE COURT . . . SHOULD HAVE MERGED COUNT SIX WITH COUNT FOUR AND HELD A HEARING AS TO DEFENDANT'S ABILITY TO PAY.
[(Partially raised below)]

We reject these contentions and affirm.

I.

On appeal, defendant first argues the trial court erred by failing sua sponte to instruct the jury on aggravated and reckless manslaughter as lesser-included offenses of murder as charged in the indictment, N.J.S.A. 2C:11-3(a)(1).  We disagree.

An offense is a lesser-included offense when:

(1)  It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2)  It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or

(3)  It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

A-0896-19

[N.J.S.A. 2C:1-8(d).]

A trial court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e). For that reason, when a defendant requests a charge on a lesser-included offense, the trial court must apply a two-pronged test to determine if the charge is appropriate. As to the first prong the court must determine whether the requested charge satisfies the statutory definition of an included offense and, if so, there must "be a rational basis in the evidence to support a charge on that included offense." State v. Cassady, 198 N.J. 165, 178 (2009) (quoting State v. Thomas, 187 N.J. 119, 131 (2006)). The second prong is satisfied "when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." State v. Jenkins, 178 N.J. 347, 361 (2004).

The applicable standard is different where, as here, a charge has not been requested. Because of constitutional concerns, a court is limited in its ability sua sponte to instruct a jury that it could convict a defendant of uncharged lesser offenses. See Thomas, 187 N.J. 132-34. "An unrequested charge on a lesser included offense must be given only where the facts in evidence 'clearly indicate' the appropriateness of that charge." State v. Savage, 172 N.J. 374, 397 (2002)

A-0896-19

(quoting State v. Choice, 98 N.J. 295, 298 (1985)). "[T]he need for the charge must 'jump off' the proverbial page." State v. R.T., 205 N.J. 493, 510 (2011) (internal quotation marks omitted). As such, a "trial court does not 'have the obligation on its own [to] meticulously . . . sift through the entire record' to find appropriate charges." Choice, 98 N.J. at 299; see also Savage, 172 N.J. at 397.

Aggravated and reckless manslaughter are lesser-included offenses of murder. Jenkins, 178 N.J. 361. The lesser-included offense analysis in the present case therefore involves the respective elements of murder and manslaughter. "Murder requires proof that [a] defendant caused death purposely, i.e., with the intent to cause or conscious object of causing death, or knowingly, i.e., with an awareness that death is practically certain to result." State v. Gaines, 377 N.J. Super. 612, 621 (App. Div. 2005) (citing State v. Cruz, 163 N.J. 403, 417 (2000)).

By contrast, "[a] lower degree of culpability is required to prove aggravated manslaughter, for which the prosecution must show that the defendant was aware of and consciously disregarded a substantial risk of death, i.e., a probability that death would result, and that the defendant manifested extreme indifference to human life." Cruz, 163 N.J. at 417 (citing N.J.S.A. 2C:11-4(a)). "The elements of aggravated and reckless manslaughter are

6

identical except for the difference in the degree of risk of death." State v. Sanchez, 224 N.J. Super. 231, 240 (App. Div. 1988). "The degree of risk in reckless manslaughter is a mere possibility of death." Ibid.

In the present matter, the facts did not clearly indicate the jury could have convicted defendant of aggravated or reckless manslaughter while acquitting him of murder. As evidenced by home video surveillance footage, around 10:00 p.m. on November 19, 2016, defendant approached Johnson on a public street in Salem City and fired a shot at close range from a six-shot defaced revolver, causing Johnson to fall to the ground. Defendant then stood over Johnson, firing the five remaining shots. No one else – except the officers who saw a muzzle flash and heard the gunshots – was in the vicinity.

According to the autopsy report, one bullet grazed Johnson's skull, two entered his left upper chest, and the remaining bullets entered his extremities. The State's ballistic expert confirmed all six bullets were fired from the revolver that defendant tossed as he ran from the police. Within two minutes of the shooting, officers recovered the revolver and arrested defendant. Following a search incident to defendant's arrest, police seized four cartridges from defendant's pocket that matched the ammunition fired from the revolver.

A-0896-19

To support his belated argument, defendant summarily references: the trial testimony of two law enforcement officers, who described the crime scene as a "high crime area" and an "open air drug market"; the officers' acknowledgment that police did not investigate the owner of a car parked on the corner when the shooting occurred; the absence of an eye-witness; Johnson's post-mortem toxicology results, indicating he tested positive for several narcotics; and the seizure of "five baggies containing suspected marijuana" from Johnson's person. Defendant's undeveloped contentions undercut his argument.

Indeed, there is no evidence in the record that, for example, Johnson was the aggressor or otherwise threatened defendant, warranting the lower-culpability manslaughter charges. See Cruz, 163 N.J. at 419. Instead, the trial evidence clearly demonstrated that defendant shot Johnson six times, with three shots aimed at his head and chest, thereby evidencing defendant's purposeful or knowing intent to kill. See State v. Simon, 161 N.J. 416, 450 (1999) (stating "common sense informs us that when someone shoots at another person in the upper body region . . . the shooter's purpose is either to cause serious bodily injury that results in death or to actually cause death, especially where no other plausible explanation is given").

A-0896-19

Moreover, en route to the police station, defendant spontaneously uttered: "It's over for me now, man. . . . I'm a dead man. They gonna bury me, man. They're really gonna bury me now. Damn, man. They got the gun and everything. Like, ain't nothing I can do about it. I'm just done." Notwithstanding these admissions, the defense strategy focused on questioning the State's proof. As one notable example, defense counsel acknowledged defendant possessed six bags of marijuana when he was arrested, rhetorically stating during summation:

> So, you have marijuana on you, you hear gunshots, you see sirens, hear sirens, see lights, is it so weird that he ran? And where could he run from? Did he come from this street? Did he come from Allen Street? Did he come from Kravin [sic]? Did he come from this way into that area? We don't know.

However, defendant did not contend he lacked the requisite intent to satisfy the culpability element of murder as charged. Nor was any evidence adduced at trial to counter defendant's admissions or the State's video evidence depicting him unloading a six-shot revolver into Johnson's defenseless body under circumstances that would somehow suggest his actions were reckless. See, e.g., State v. Ramsey, 415 N.J. Super. 257, 271 (App. Div. 2010) (finding no error where the trial judge did not instruct the jury on lesser-included manslaughter charges because "it cannot reasonably be said that shooting a

A-0896-19

victim in the abdomen upon discharge of a firearm four times, in close range (within five to ten feet of the defendant), involved mere reckless conduct or a conscious disregard of a substantial risk of death").

Under the facts and circumstances presented here, we discern no error, let alone plain error, in the court's omission of the uncharged lesser offenses. See R. 2:10-2.

## II.

We turn next to defendant's contentions that he was unduly prejudiced by the prosecutor's lengthy playback of "almost all the video recordings from the night of the offense," and the court's failure sua sponte to issue a cotemporaneous limiting instruction. Because defendant did not object to the playback and did not request a cautionary instruction, we review his newly-minted challenges through the prism of the plain error standard. R. 2:10-2.

Initially, defendant's reliance on our decision in State v. Muhammad, 359 N.J. Super. 361 (App. Div. 2003), is misplaced. In Muhammed, the court permitted the prosecutor to replay "portions of the trial testimony of five State witnesses" over the defendant's objection. Id. at 372. There, "[t]he trial was conducted in a courtroom equipped with videotape as the means of officially recording the proceedings." Ibid.

10

On appeal, the defendant renewed his objection and claimed, for the first time, that the court should have conducted a hearing under N.J.R.E. 104(a) and issued a limiting instruction. Ibid. We held the trial court did not err in permitting the prosecutor to replay the recorded testimony. Id. at 373. Although we further concluded a trial court "should give a cautionary instruction, preferably at the time the video is played during summation and again in the final charge," we found no plain error. Id. at 382-83. Unlike the present case, however, this court in Muhammed did not consider the playback of contemporaneous video recordings of the crime scene, which were unaccompanied by audio, or the defendant's recorded admissions.

More recently, in State v. Miller, 205 N.J. 109, 122-24 (2011), the Court provided guidance to trial judges in dealing with video playback requests, again in the context of a jury's request for testimony recorded during the trial. Among other things, "at the time the testimony is repeated, judges should instruct jurors to consider all of the evidence presented and not give undue weight to the testimony played back." Id. at 123.

In the present matter, unlike Muhammed and Miller, the video playback did not involve a witness's recorded trial testimony. Instead, the recordings here actually documented the crime in progress. Other than defendant's admissions

11

captured on the patrol car's MVR, the video recordings did not contain any statements or sounds.

Moreover, defendant not only failed to object to the prosecutor's replay of the videos during summation, but defense counsel affirmatively consented to the placement of the monitor near the jury box because he intended to "us[e] it as well" in his closing argument. Indeed, defense counsel replayed portions of the MVR that depicted the "muzzle flash" to cast doubt on the officers' credibility.

Further, defendant's contentions that the MVR recording, alone, spanned forty-five minutes is inaccurate. The prosecutor played short portions of several videos, stopping at times to add commentary, totaling about forty-five minutes in duration. Notably, defendant does not challenge the prosecutor's commentary on the replayed video segments.

Instead, defendant alleges in passing that the prosecutor "denigrate[d] the defense" by instructing the jury not to believe his attorney's closing statement that the police "tackled" defendant when the video demonstrated otherwise. Defendant's belated contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We simply note the prosecutor's comment followed defense counsel's skillful attempt to dispel the State's argument that

defendant resisted arrest and the comment was based on the trial record.  See State v. Blakney, 189 N.J. 88, 96 (2006).

In sum, we find no basis on this record to conclude that the video replays had the clear capacity to cause the jury to convict defendant when they otherwise would have acquitted him.  See R. 2:10-2.

Nor are we persuaded that the court failed sua sponte to issue a limiting instruction when the non-testimonial videos were replayed by the prosecutor. During the final charge, the jury was properly instructed that it should consider all "relevant and material" evidence and that ascribe the appropriate weight to it.  Although a limiting instruction would have been appropriate had it been requested when the prosecutor – and defense – replayed the videos during summation, in these circumstances, the failure to provide the jury additional instruction as to how to consider the surveillance video was not capable of producing an unjust result.  R. 2:10-2; see also State v. Wakefield, 190 N.J. 397, 473 (2007) (holding that under Rules 1:7-2 and 2:10-2, "the failure to object to a jury instruction requires review under the plain error standard").

## III.

Defendant next contends the trial court failed to issue a mere presence instruction regarding the unlawful possession of a weapon charge.  Citing our

Supreme Court's decision in State v. Randolph, 228 N.J. 566, 592 (2012), defendant argues his "'mere presence' near the gun was insufficient to find beyond a doubt that defendant was guilty." Because defendant actually – and not constructively – possessed the revolver, his reliance on Randolph is misplaced.

During the charge conference concerning the unlawful possession of a weapon count, the parties agreed that the court would charge actual possession but not constructive possession. Defense counsel initially sought a hybrid charge, i.e., "mere presence without constructive possession." Citing Randolph, defense counsel ultimately acknowledged the mere presence instruction applied only when constructive possession was charged.

In Randolph, our Supreme Court held the trial judge erred in a drug possession prosecution by failing to issue a mere presence instruction. 228 N.J. at 590-93. Unlike the present matter, the State's theory was that the defendant constructively possessed narcotics in an apartment from which he had fled. Id. at 591. The defendant in that case was charged with drug possession and distribution offenses. Id. at 573.

Conversely here, the revolver was recovered by police after they observed defendant discard an object while running from the murder scene. The revolver

was recovered a few feet from the location where the police arrested defendant. Moreover, defendant's admissions, including that police "got the gun and everything" implicitly acknowledged he "knowingly ha[d] [the revolver] on his person at a given time," i.e., during and after the shooting. Because defendant's possession of the revolver was "actual" and not "constructive," the mere presence portion of the unlawful possession of a weapon jury charge was inapplicable to the facts adduced at trial.

IV.

In point IV, defendant argues the trial court erred by denying his motion for acquittal on the tampering with evidence charge. Before the trial court – without citation to case law – defense counsel contended even assuming "[his] client threw something . . . under the statute that [does not] constitute[] tampering with evidence." On appeal, defendant reprises his argument, now arguing his conviction for tampering with evidence is inconsistent with our decisions in State v. Sharpless, 314 N.J. Super. 440 (App. Div. 1998), and State v. Fuqua, 303 N.J. Super. 40 (App. Div. 1997). We are unpersuaded.

We review de novo "the sufficiency of the evidence on an acquittal motion." State v. Williams, 218 N.J. 576, 593-94 (2014); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 3:18-1 (2021). "We must

15

determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Williams, 218 N.J. at 594. We also review the trial court's legal conclusions de novo. State v. Handy, 206 N.J. 39, 45 (2011). Statutory interpretation presents an issue of law to which we owe the trial court no deference. State v. Gandhi, 201 N.J. 161, 176 (2010).

N.J.S.A. 2C:28-6(1) defines the crime for which defendant was charged and convicted. In pertinent part, the statute provides:

> A person commits a crime of the fourth degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> (1) Alters, destroys, conceals or removes any article, object, record, document or other thing of physical substance with purpose to impair its verity or availability in such proceeding or investigation . . . .

In Sharpless, we reversed the defendant's conviction for tampering with evidence in violation of N.J.S.A. 2C:28-6(1). 314 N.J. Super. at 457-59. The evidence supporting the conviction demonstrated the defendant discarded twenty-three decks of heroin as he was approached by the police prior to his arrest for possessory drug offenses. Id. at 446-47.

16

We construed the application of N.J.S.A. 2C:28-6 with the same rationale underlying our decision in Fuqua, where we considered a constitutional challenge to the application of N.J.S.A. 2C:29-3(b)(1) (hindering one's own apprehension). Id. at 459. We recognized it was common for individuals possessing criminal contraband to attempt to hide it from law enforcement and discard it upon the approach of law enforcement. Ibid. We reasoned that N.J.S.A. 2C:28-6 did not constitute a sufficiently clear statement of legislative intent to permit convictions for a possessory offense and tampering with evidence each time a defendant took an action to hide or discard evidence of the possessory offense. Ibid. We held:

> [C]onsistent with the court's interpretation of N.J.S.A. 2C:29-3(b)(1) in Fuqua, we construe the phrase "conceal[ment]" of "any article . . . with the purpose to impair its availability in [an investigation]" in N.J.S.A. 2C:28-6 to refer only to "evidence of a completed criminal act, not a current possessory crime." Under this analysis, defendant's abandonment of his drug supply occurred during the course of his ongoing possession of heroin with the intent to distribute and consequently did not constitute tampering with evidence.
>
> [Ibid. (citation omitted) (emphasis added).]

In the present case, defendant was indicted for murder and aggravated assault with a deadly weapon. To prove these offenses beyond a reasonable

doubt in this case, the State was required to demonstrate defendant caused Johnson's death or serious bodily injury resulting in death. Because these offenses required the unlawful <u>use</u> of a weapon, they are clearly distinguishable from unlawful <u>possession</u> of a weapon. Although the indictment charged defendant with unlawful possession of the revolver, unlike the defendant in <u>Sharpless</u>, defendant's act of discarding the gun in this case was intended to hinder the non-possessory prosecutions for murder and aggravated assault. We therefore find no merit in defendant's contentions that "the underlying homicide . . . " was not "completed" when he discarded the revolver.

## V.

Lastly, we consider defendant's challenges to his sentence. Defendant was convicted of ten offenses[1] charged in a Salem County indictment: first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count three); second-degree unlawful possession of a weapon N.J.S.A. 2C:39-5(b)(1) (count four); second-

---

[1] Count eleven, charging defendant with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b), was bifurcated from the other counts for trial. Following defendant's convictions, the trial court granted the State's motion to dismiss count eleven.

18

degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count five); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count six); second-degree possession of a weapon while committing a controlled dangerous substance (CDS) offense, N.J.S.A. 2C:39-4.1(a) (count seven); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count eight); fourth-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(12) (count nine); and fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1) (count ten).

Prior to imposing sentence, the court considered the memoranda filed by the parties, oral argument, the in-court statement of Johnson's mother, and correspondence from Johnson's girlfriend, with whom the decedent co-parented five children. The court granted the State's unopposed motions: (1) for merger of counts two, three, and five with count one; and (2) mandatory extended terms on counts one, four, six, and seven under the Graves Act, N.J.S.A. 2C:43-6(c) (requiring an extended term where a defendant was previously convicted of unlawful possession of a weapon), and N.J.S.A. 2C:43-6(f) (requiring an extended term where a defendant was previously convicted of a CDS manufacturing or distribution offense).

A-0896-19

Finding aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the offense); three, N.J.S.A. 2C:44-1(a)(3) (the risk of committing another offense); six, N.J.S.A. 2C:44-1(a)(6) (the extent of defendant's prior criminal record and the severity of those offenses); and nine, N.J.S.A. 2C:44-1(a)(9) (specific and general deterrence), outweighed mitigating factor six, N.J.S.A. 2C:44-1(b)(6) (the defendant has or will pay restitution), the court sentenced defendant to a sixty-year term of imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and the Graves Act, N.J.S.A. 2C:43-6(c) on count one. Pertinent to this appeal, the court sentenced defendant to a concurrent fifteen-year prison term, with a parole ineligibility term of seven and one-half years, subject to the Graves Act on count four, and a concurrent five-year prison term with a five-year term of parole ineligibility under the Graves Act on count six. The sentences on all remaining counts were ordered to run concurrently with one another, except for count nine, which was imposed consecutively to count seven.

Further, the court determined the amount of restitution sought was "not exorbitant," and granted the State's request for $7759, which included funds disbursed by the Victims of Crime Compensation Board, and Johnson's mother for funeral expenses. Notably, in seeking mitigating factor six, defense counsel

20

represented that he spoke with defendant and "there's been no objection to restitution as requested by the State."

On appeal, defendant claims his sentence is excessive and the court made three errors by: (1) improperly double-counting the elements of murder by finding aggravating factor one; (2) failing to merge counts four (unlawful possession of a firearm) and six (unlawful possession of a defaced firearm); and (3) ordering restitution without first determining defendant's ability to pay.

"Appellate review of the length of a sentence is limited." Miller, 205 N.J. at 127. Ordinarily, we defer to the sentencing court's determination, State v. Fuentes, 217 N.J. 57, 70 (2014), and do not substitute our assessment of the aggravating and mitigating factors for that of the trial judge, Miller, 205 N.J. at 127. We must affirm the sentence, unless: "the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record." Fuentes, 217 N.J. at 70. "Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime," State v. Lawless, 214 N.J. 594, 608 (2013), which "would result in impermissible double-counting." State v. A.T.C., 454 N.J. Super. 235, 254 (App. Div. 2018); see also State v. Yarbough, 100 N.J. 627, 640-41 (1985). We will remand for resentencing if the sentencing

A-0896-19

court considers an inappropriate aggravating factor.  Fuentes, 217 N.J. at 70.

## A.

On appeal, defendant contends the trial court inappropriately found aggravating factor one because "there was little if any evidence that the offense was more serious than other murders or was committed in 'an especially heinous, cruel, or depraved manner.'"  We disagree.

Aggravating factor one "must be premised upon factors independent of the elements of the crime and firmly grounded in the record."  Fuentes, 217 N.J. at 63.  Aggravating factor one not only requires consideration of "[t]he nature and circumstances of the offense," but also "the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner . . . ."  N.J.S.A. 2C:44-1(a)(1).  "In appropriate cases, a sentencing court may justify the application of aggravating factor one, without double-counting, by reference to the extraordinary brutality involved in an offense."  Fuentes, 217 N.J. at 75; see also State v. Soto, 340 N.J. Super. 47, 71-72 (App. Div. 2001) (applying factor one in an aggravated manslaughter and felony murder case where the defendant brutally and viciously attacked the victim).

A-0896-19

The trial court acknowledged it "debate[d] this factor at some length" but was persuaded by the State's argument "that because the first shot that was fired caused Mr. Johnson to fall to the ground and, in theory, should have been sufficient for the shooter's purposes, instead [defendant] stood over the body and fired five more shots." Accordingly, the court reasoned "those five extra shots were sufficient" to support aggravating factor one. Implicit in the court's decision is the brutality of the execution-style shooting, which exceeded the elements of the murder charge. Fuentes, 217 N.J. at 75. We therefore conclude the judge's finding of this aggravating factor was "based upon competent and credible evidence in the record," id. at 70, and did not constitute "impermissible double-counting," A.T.C., 454 N.J. Super. at 254.

B.

We next consider defendant's newly-raised contention that the court failed to merge the weapons convictions at sentencing. "At its core, merger's substantial purpose 'is to avoid double punishment for a single wrongdoing.'" State v. Romero, 191 N.J. 59, 80 (2007) (quoting State v. Diaz, 144 N.J. 628, 637 (1996)); see also State v. Miller, 108 N.J. 112, 116 (1987) (merger stems from the well-established principle that an accused who has committed only one

23

offense "cannot be punished as if for two"). "[M]erger implicates a defendant's substantive constitutional rights." State v. Cole, 120 N.J. 321, 326 (1990).

In deciding whether to merge convictions, the court must first ascertain "whether the legislature has in fact undertaken to create separate offenses; and, if so, it must then be determined whether those separate offenses have been established under the proofs." State v. Valentine, 69 N.J. 205, 209 (1976); see also State v. Allison, 208 N.J. Super. 9, 22-23 (App. Div. 1985). We must "focus on the elements of the crime, the Legislature's intent in enacting the statutes, and the specific facts of each case." State v. Dillihay, 127 N.J. 42, 47 (1992); see also State v. Bull, 268 N.J. Super. 504, 513 (App. Div. 1993). We also consider "the time and place of each purported violation." State v. Davis, 68 N.J. 69, 81 (1975). Where the offenses are in fact indistinguishable, the resulting convictions must be merged. State v. Best, 70 N.J. 56, 61 (1976).

Further, N.J.S.A. 2C:1-8 provides for merger of offenses to avoid impermissible multiple convictions for the same conduct and sets forth a series of factors to guide a court in determining whether to bar multiple convictions for conduct that constitutes more than one offense. In particular, N.J.S.A. 2C:1-8(a)(1) provides that a defendant may not be convicted of multiple offenses if "[o]ne offense is included in the other." An offense is included in the other when

"[i]t is established by proof of the same or less than all the facts required to establish the commission of the [other] offense . . . ." N.J.S.A. 2C:1-8(d)(1); see also State v. Mirault, 92 N.J. 492, 502-03 (1983).

Applying these principles to the facts of this particular case, we are unpersuaded by defendant's argument that because the "same handgun was defaced" the court should have merged the weapons offenses. Although both weapons offenses require knowing possession, the offenses have distinct elements. Unlawful possession of a weapon requires the State to prove the defendant did not have a permit to possess the weapon, N.J.S.A. 2C:39-5(b), whereas possession of a defaced weapon requires the State to prove that the firearm was defaced, N.J.S.A. 2C:39-3(d). Stated another way, an individual who obtains a permit to carry a handgun and later alters the serial numbers of that gun, would violate N.J.S.A. 2C:39-3(d), but not N.J.S.A. 2C:39-5(b).

C.

It is well established that before ordering restitution pursuant to N.J.S.A. 2C:44-2(b)(2), the sentencing court must first determine that the defendant has a present or future ability to pay. See State v. Newman, 132 N.J. 159, 169 (1993). If "there is a good faith dispute over the amount of loss or the defendant's ability to pay," the court is required to conduct a restitution hearing

25

to resolve those issues. State v. Jamiolkoski, 272 N.J. Super. 326, 329 (App. Div. 1994); see also N.J.S.A. 2C:44-2(c). Conversely, where there is no controversy as to the amount and ability to pay, a hearing is not required. See State v. Orji, 277 N.J. Super. 582, 589-90 (App. Div. 1994) (holding a restitution hearing was unnecessary where the defendant neither objected to his attorney's representation that he was able to pay the amount imposed nor disputed his ability to pay).

On appeal, defendant briefly contends the court failed to conduct an ability-to-pay hearing here, where "the record showed defendant does not have the ability to pay with no assets and little employment history." Because defendant agreed to pay restitution and thus convinced the court to find mitigating factor six, we need not entertain his belated claims on appeal that the trial court should have granted a hearing he never requested. We nonetheless note defendant's failure to dispute the amount sought and his ability to pay did not require a hearing. Id. at 589-90.

To the extent not specifically addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e) (2).

26

A-0896-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0896-19